[No. A030737. First Dist., Div. Three. May 9, 1986.]

NORTH AMERICAN ASBESTOS CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
WILLIAM S. YOUNG et al., Real Parties in Interest.

**COUNSEL**

David A. Gifford and Ericksen, Arbuthnot, Walsh, Paynter & Brown for Petitioner.

No appearance for Respondent.

Karen Kahn, Steven Kazan, Bryce C. Anderson, Weltin & Van Dam, Robert S. Daggett, L. Christopher Vejnoska, Brobeck, Phleger & Harrison, Mark G. Bonino, Dorothy McArthur Landro and Ropers, Majeski, Kohn, Bentley & Wagner for Real Parties in Interest.

**OPINION**

**MERRILL, J.**—Petitioner, North American Asbestos Corporation, a dissolved Illinois corporation defending an action alleging injury from asbestos, challenges a ruling denying its motion for summary judgment. Petitioner had sought a determination that suit was barred because it was filed more than two years after dissolution of the corporation. Applying choice of law principles, we conclude that under California Corporations Code section 2010 the suit may be maintained.

California Corporations Code section 2010 provides that "[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it . . . ." It also provides that "[n]o action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof." Under that section there is no time limitation for suing a dissolved corporation for injuries arising out of its predissolution activities (*North American Asbestos Corp.* v. *Superior Court* (1982) 128 Cal.App.3d 138, 143 [179 Cal.Rptr. 889]), other than the time prescribed by the applicable statute of limitations.

Petitioner North American Asbestos Corporation (North American), the same defendant involved in *North American Asbestos Corp.* v. *Superior Court, supra,* filed its articles of dissolution, and on May 19, 1978, received a certificate of dissolution from the Secretary of State of Illinois. The underlying lawsuit was filed December 18, 1980, and on November 13, 1983, North American was served as a Doe defendant. North American moved for summary judgment on the ground that the suit was barred by Illinois' two-year survival statute, which provided, at the time of suit, that the dissolution of a corporation shall not impair any remedy for a liability incurred prior to dissolution "if action or other proceeding thereon is commenced within two years after the date of such dissolution." (Ill. Rev. Stat., ch. 32, § 157.94 (1977).) The court applied California law and denied the motion. This petition followed.

■ Real parties in interest, William S. Young (the plaintiff below), and Fibreboard Corporation (one of petitioner's codefendants), contend that under choice of law principles, the trial court was correct in applying California law instead of Illinois law. We agree. ■ Analysis of a choice of law question proceeds in three steps: (1) determination of whether the potentially concerned states have different laws, (2) consideration of whether each of the states has an interest in having its law applied to the case, and (3) if the laws are different and each has an interest in having its law applied (a "true" conflict), selection of which state's law to apply by determining which state's interests would be more impaired if its policy were subordinated to the policy of the other state. (See *Bernhard* v. *Harrah's Club* (1976) 16 Cal.3d 313, 320 [128 Cal.Rptr. 215, 546 P.2d 719]; *Hurtado* v. *Superior Court* (1974) 11 Cal.3d 574, 580-581 [114 Cal.Rptr. 106, 522 P.2d 666].)

(1) *Do California and Illinois have different laws?*

■ It is apparent that the laws of California and Illinois differ in their treatment of suits against dissolved corporations. California Corporations Code section 2010 provides that a corporation which is dissolved continues to exist for purposes of defending actions against it for injuries arising out of its predissolution activities (*North American Asbestos Corp.* v. *Superior Court, supra,* 128 Cal.App.3d 138, 143). Illinois law provides for such litigation only if the action or proceeding thereon is commenced within two years after the date of corporate dissolution (Ill. Rev. Stat., ch. 32, § 157.94 (1977)) unless one of several recognized exceptions to the two-year requirement is found. (See, e.g., *Moore* v. *Nick's Finer Foods, Inc.* (1984) 121 Ill.App.3d 923 [460 N.E.2d 420]; *Edwards* v. *Chicago and Northwestern Railway Co.* (1967) 79 Ill.App.2d 48 [223 N.E.2d 163]; *People* v. *Parker* (1964) 30 Ill.2d 486 [197 N.E.2d 30].) Here, where the lawsuit was filed

over two years after corporate dissolution, the differences between California and Illinois law assume great importance.

(2) *Does each state have an interest in having its law applied?*

Even where "the two potentially concerned states have different laws, there is still no problem in choosing the applicable rule of law where only one of the states has an interest in having its law applied." (*Hurtado* v. *Superior Court, supra,* 11 Cal.3d 574, 580; see also Currie, Selected Essays on Conflicts of Laws (1963) p. 189.) Here, unlike the situation in *Hurtado,* each state has an interest in having its law applied. Illinois has an interest in protecting its corporations from extended litigation after dissolution because such litigation impairs the ability of the corporation to wind up its affairs and leaves doubt about the value of outstanding shares. But California has an interest in allowing injured residents to recover for injuries incurred within the state prior to dissolution which, in some cases, have not manifested themselves before dissolution. California also has an interest in assuring that codefendants jointly liable for the damages are not required to pay the share of damages attributable to dissolved corporations. In today's complex litigation involving multiple parties, one or more of the codefendants may well be a California corporation. The interests of California and Illinois cannot both be satisfied.

(3) *Which state's interest would be more impaired if its policy were subordinated to the policy of the other state?*

Illinois' interests would not be greatly impaired by applying California law to permit suit against North American over two years after its dissolution. Even without suits by California plaintiffs brought over two years after dissolution, North American's winding up of its affairs would likely be impeded by pending lawsuits. North American may have been and may still be sued by plaintiffs in other states which permit suits against dissolved foreign corporations. Suits may still be pending by plaintiffs from any state who filed their actions before expiration of the two-year period after dissolution. Still other plaintiffs may come within exceptions to the two-year period of the Illinois statute itself, such as the tolling for minors (*Moore* v. *Nick's Finer Foods, Inc., supra,* 121 Ill.App.3d 923 [460 N.E.2d 420]) or because of failure to notify known creditors of the intent to dissolve (see *People* v. *Parker, supra,* 30 Ill.2d 486), or because of inducement to delay in filing claims (see *Edwards* v. *Chicago and Northwestern Railway Co., supra,* 79 Ill.App.2d 48). North American's ability to wind up does not hinge on whether real party Young and other California plaintiffs are permitted to sue North American over two years after dissolution. In addition

when we are considering a large national corporation doing business throughout the United States the singular interest of the state of incorporation is diminished. Being the state of incorporation does not establish it as the state in which the corporation conducts most of its business or has a majority of its shareholders. A state of incorporation is often selected on a basis of certain tax advantages or a liberal securities act.

By contrast, California's interests would be greatly impaired by a decision to apply Illinois law. Unless an exception to the two-year period could be found, plaintiff would be unable to recover damages if only North American were found liable. This would be true despite the fact that the conduct giving rise to the cause of action and the injuries that were incurred took place within the state of California. Similarly, California codefendants would be barred from seeking appropriate contribution from North American in the event of joint liability. California has a strong interest in permitting its residents to seek compensation for injuries caused by hazardous substances and in ensuring that damages are appropriately shared by codefendants.

A further fact to be considered is that North American was licensed for the transaction of intrastate business in California under a certificate of qualification from March 1, 1957, to October 3, 1974. Although this in itself is not a basis for maintaining the present action against North American, it is a factor in determining California's interest in applying its laws. When a person suffers injury in California as a result of business conducted by a foreign corporation then qualified to do business within the state, California has a legitimate interest that the foreign corporation not be permitted to avoid responsibility for its wrongful act by withdrawing from the state.

It is clear that California's interests would be more impaired by application of Illinois law than would Illinois' interests by application of California law. Under choice of law principles, California law should be applied.

The above analysis is similar to the analysis we would apply if asked to choose between California's statute of limitations and the statute of limitations of another affected jurisdiction. This is not surprising, since Illinois Revised Statutes 1977, chapter 32, section 157.94, does not bar the commencement of an action after dissolution but only limits the time period for the commencement of the action much like a statute of limitations. It also provides for "tolling" for minority, concealment and inducement to delay, similar to a statute of limitations. Whether called a survival law or a statute of limitations, the Illinois law improperly restricts a California plaintiff from seeking compensation for injuries occasioned by North American's conduct

of business in California. Illinois' interest in this result does not outweigh California's interest in permitting suit.

■ This result deviates from the dicta in *North American Asbestos Corp.* v. *Superior Court, supra,* 128 Cal.App.3d 138, where this court said that Corporations Code section 2010 applied only to domestic corporations. On further reflection and examination of some of the history behind Corporations Code section 2010 and related provisions of corporation law, we have concluded that section 2010 should not be so read under the circumstances of the case at bench, but should be read to protect the interests of California.

The keys to interpreting section 2010 lie in article XII, section 15 of the California Constitution and in the circumstances of its repeal in 1972. That provision, adopted in the Constitution of 1879, provided: "No corporation organized outside the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State." Because of this constitutional provision, a statute placing an obligation on a domestic corporation, such as one permitting suit against it long after its dissolution, would be read as placing a similar burden on a foreign corporation licensed to transact intrastate business in California (see *Clark* v. *Williard* (1934) 292 U.S. 112, 119 [78 L.Ed. 1160, 1165, 54 S.Ct. 615], where a similar provision of the Montana Constitution was so construed).

Article XII, section 15, was in effect when the original version of Corporations Code section 2010, applying survival law to "[a]ll corporations," was adopted (Stats. 1929, ch. 711, § 29, p. 1277). Corporations Code section 162 and its predecessors, defining a "corporation" to mean only a "domestic corporation" or a corporation organized under California law, had not yet been adopted (see former Civ. Code, § 278, added by Stats. 1931, ch. 862, § 2, p. 1764). In fact, at that time Civil Code section 283 (Stats. 1929, ch. 711, § 1, p. 1261) stated that the provisos of its title were applicable to "every private corporation." Many other sections specified "domestic corporation" or "foreign corporation" when such a limitation was intended (see, e.g., Stats. 1929, ch. 711, §§ 28, 30, pp. 1275, 1277-1278; Stats. 1929, ch. 712, §§ 5-9, pp. 1290-1291). Thus, in 1929 it was clear that California's survival law applied to both foreign and domestic corporations.

Before long, definitional sections were amended so that the term "corporation" used in Corporations Code section 2010 could arguably have come to mean only a domestic corporation (see Corp. Code, §§ 102 and 162). But the circumstances of the repeal of article XII, section 15, show that no

such change in the law was intended and that "corporation" as used in section 2010 still has its original meaning, covering both domestic and foreign corporations to the extent that foreign corporations will not receive more favorable treatment than domestic corporations.

Repeal of article XII, section 15, was first proposed in 1967 by the Article XII Committee of the Constitution Revision Commission (Minutes of the Meeting of the Constitution Revision Commission, February 16, 1967). The committee suggested deletion of section 15 because "[t]he section can be dealt with by statute. The committee recommended deletion of the entire section." (*Ibid.*) The report of the California Constitution Revision Commission, dated 1968, page 92, proposed repeal of section 15 with the following comment: "Equal treatment of foreign and domestic corporations is assured by other provisions of the California and Federal Constitutions. The transaction of business in California by foreign corporations also is governed by extensive statutes. This Section therefore is deleted as unnecessary." After being defeated twice at the polls, the proposal to repeal article XII, section 15 (along with several other provisions), was approved at the primary election held June 6, 1972. The ballot argument supporting repeal stated only that the proposition approved was "basically a housekeeping measure to eliminate obsolete and unnecessary words from the Constitution. No new material is added to the Constitution, and there is no change in law or policy."

Because the electorate did not intend to change the law by repeal of article XII, section 15, we read the term "corporation" in Corporations Code section 2010 to have its original meaning when we are dealing with the question of whether a foreign corporation will receive more favorable treatment than a domestic corporation, that is, to include both domestic and foreign corporations. Though the Legislature added definitional sections in 1931 (Stats. 1931, ch. 862, § 2, p. 1764) and took other steps to tighten up the language of the corporation laws, it never took deliberate action to abrogate the original policy of treating foreign corporations no more favorably than domestic corporations with respect to their capacity to be sued. Nor did the electorate take action intended to exempt foreign corporations from the California survival law. We read section 2010 in accordance with the intentions of both the Legislature and the electorate.

Adoption of Corporations Code section 2115 does not alter our view of Corporations Code section 2010. Section 2115 subjects certain foreign corporations with extensive property, payroll, sales, and shareholders in California to a panoply of provisions of the California Corporations Code. Missing from the list is Corporations Code section 2010. Petitioner contends

that this omission mandates a finding that section 2010 applies only to domestic corporations and not to either purely foreign corporations or to the "quasi-foreign" corporations targeted by Corporations Code section 2115. However, petitioners reasoning is flawed, and we read no significance from section 2115's silence about section 2010. It is evident from scrutiny of the list of provisions applied to "quasi-foreign" corporations that they cover the mechanics of corporate life which would ordinarily be directed just to domestic corporations. Stated in general terms, section 2115 merely provides that when a foreign corporation conducts more than one-half of its business in California and has more than one-half of its shareholders in the state, it will be subject to certain statutory provisions usually reserved for domestic corporations. There is no indication that in enacting section 2115 the Legislature even considered the question of whether a foreign corporation should survive for purposes of suit. It is apparent that the Legislature felt that the provisions encompassed in section 2115 should only apply to foreign corporations if the specified percentages for business and share holdings in our state were reached, but this does not indicate any intention on the part of our lawmakers that other provisions of the law may not be applicable to foreign corporations. There are a myriad of statutory provisions that apply to foreign corporations that are not included in section 2115. And the absence of these statutory provisions from section 2115 is for a good reason, because they apply to all foreign corporations, not just to corporations which meet the percentage figures prescribed in section 2115.

Having concluded that Corporations Code section 2010 should apply to North American for purposes of this suit, the only question remaining is whether California may properly subject a foreign corporation to the burdens of section 2010. This question was answered by the United States Supreme Court in *Clark* v. *Williard, supra,* 292 U.S. 112. In circumstances similar to these, the court considered an argument that the corporation's capacity for suit should be determined by application of the law of its domicile. The court found, however, that the cited cases expressed a rule that was "to be applied when there is no statute or public policy to the contrary in the state where the foreign corporation has been licensed to do business. They do not delimit the capacity of a state, when granting such a license, to subject it to conditions." (*Id.,* at p. 119 [78 L.Ed. at p. 1165].) Petitioner concedes that it was licensed to conduct business in California from 1957 until 1974, a period in which its activities within the state give rise to this lawsuit. Corporations Code section 2010 may properly govern suits against petitioner. Petitioner's dissolution over two years before the action was filed does not bar the suit. The lower court was correct in denying summary judgment.

The alternative writ is discharged and the petition for a peremptory writ is denied.

White, P. J., concurred.

**SCOTT, J.**—I dissent. Corporations are creatures established under the authority of statute and exist only in accordance with the terms prescribed by statute. Four years ago, in *North American Asbestos Corp.* v. *Superior Court* (1982) 128 Cal.App.3d 138 [179 Cal.Rptr. 889] (*North American I*) this court stated that Corporations Code section 2010 applied only to domestic corporations. Then, as now, Corporations Code section 102 provided, with certain exceptions not applicable here, that the provisions of the Corporations Code apply only to domestic corporations and that application to other corporations is permitted only "to the extent expressly included in a particular provision of this division." Then, as now, Corporations Code section 2010 made no mention of foreign corporations, which were the subject of the entire next chapter of the code. Then, as now, there was no constitutional prohibition against legislative favoritism toward foreign corporations.

In *North American I,* we noted: "It is clear that the California survival law does not apply to suits against dissolved foreign corporations. California Corporations Code section 2010 provides that '[a] corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it . . . .' It also provides that '[n]o action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof.' Thus, there is no time limitation for suing a dissolved corporation for injuries arising out of its predissolution activities.

"If section 2010 applies to foreign corporations as well as to domestic corporations, then application of California law would permit these lawsuits to continue. However, section 2010 does not apply to a foreign corporation.

"In a law review note entitled *Foreign Corporations: Continuance of Existence After Dissolution* (1947) 35 Cal.L.Rev. 306, the author observed that Civil Code section 399, the predecessor to Corporations Code section 2010, was applicable only to domestic corporations and suggested an amendment to include foreign corporations. No such amendment has taken place.

"From a reading of Corporations Code generally, we conclude that it does not apply to foreign corporations which have dissolved. Corporations

Code section 102 provides that with certain exceptions not applicable here the provisions of the Corporations Code apply only to domestic corporations and that application to other corporations is permitted only 'to the extent expressly included in a particular provision of this division.' Section 2010 is in chapter 20 of division 1, which is entitled 'General Provisions Relating to Dissolution.' Nowhere is there any mention that the provisions of that chapter or of section 2010 apply to foreign corporations. Foreign corporations are the subject of the entire next chapter, chapter 21." (*North American I, supra,* 128 Cal.App.3d at pp. 143-144, fn. omitted.)

As we observed in *North American I* at page 144, Corporations Code section 102 provides that for the most part the Corporations Code provisions apply only to domestic corporations. Nothing in section 2010 suggests its application to foreign corporations, which are the subject of chapter 21, not chapter 20 of the Corporations Code. Indeed, section 2010 applies only to a "corporation" which is defined by Corporations Code section 162 to refer only to a corporation organized under California law. If these indications from the Legislature are not enough, its addition of Corporations Code section 2115 in 1975 made quite clear the Legislature's intention that section 2010 apply only to domestic corporations.

Corporations Code section 2115 (added by Stats. 1975, ch. 682, § 7, pp. 1616-1617, eff. Jan. 1, 1976; amended by Stats. 1976, ch. 641, § 32.5, pp. 1571-1572, eff. Jan. 1, 1977) provides that if a foreign corporation has more than 50 percent of its property, payroll, and sales (averaging the three percentages) in California and more than one-half of its stock held by persons with California addresses it will be subject to certain enumerated sections of the California Corporations Code. Corporations Code section 2010 is not one of the enumerated sections. The Legislative Committee comment, printed with section 2115 (24 West's Ann. Corp. Code, p. 703; Deering's Ann. Corp. Code (1977 ed.) foll. § 2115, p. 340) states: "Prior law expressly applies only to corporations which are incorporated in this state subject to a very few exceptions (e.g., provisions relating to indemnification and inspection of records). In general, if a corporation is incorporated in another state it is not required to comply with the General Corporation Law of this state even though all of its shareholders reside in this state and it carries on all of its business within this state. This section requires a foreign corporation with specified minimum contacts in this state to comply with certain provisions of the new law, for the protection of California creditors and shareholders."

The Legislature, having turned its attention to what provisions of California corporation law should apply to foreign corporations doing significant

business in California, elected not to apply Corporations Code section 2010. We cannot by judicial fiat fill the void left by the Legislature nor provide greater regulation of a corporation not shown to meet the 50 percent requirement than the Legislature has announced for such a "quasi-foreign" corporation.

The only significant change since the decision in *North American I* is the majority's discovery of reports showing that the Constitution Revision Commission and the electorate may not have realized the full impact of the decision to repeal article XII, section 15 of the California Constitution. But no amount of electoral error in repealing article XII, section 15, can supply a missing word to Corporations Code section 2010. Whether the electorate realized it or not, repeal of article XII, section 15, removed the only bar to treating foreign corporations more favorably than domestic corporations with regard to corporate survival as the Legislature most clearly has done.

After our decision in *North American I* either the electorate or the Legislature could easily have amended section 2010 to apply to foreign corporations. Neither did so. Now the majority of this court, purporting to act "in accordance with the intentions of both the Legislature and the electorate," supplies the missing amendment. I would leave the amending process to the Legislature and, where appropriate, to the electorate.