184 Cal.App.4th 15 (2010)
KAREN GREB as Personal Representative, etc., et al., Plaintiffs and Appellants,
v.
DIAMOND INTERNATIONAL CORPORATION, Defendant and Respondent.
No. A125472.
Court of Appeals of California, First District, Division One.
April 26, 2010.
*17 Clapper, Patti, Schweizer & Mason, Jack K. Clapper, Steven J. Patti and Christine A. Renken for Plaintiffs and Appellants.
Murchison & Cumming, Maria A. Starn and Scott L. Hengesbach for Defendant and Respondent.

*18 OPINION
DONDERO, J. 
Plaintiffs Walter Greb (now deceased) and his wife Karen Greb appeal from the order of the trial court sustaining, without leave to amend, defendant Diamond International Corporation's demurrer to the complaint. The court concluded defendant, a dissolved Delaware corporation, lacked the capacity to be sued because plaintiffs' lawsuit was filed more than three years after defendant's dissolution. We affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On December 22, 2008, plaintiffs filed a complaint for personal injury and loss of consortium against defendant and several other defendants. The complaint alleged Mr. Greb had suffered injury from exposure to asbestos and asbestos-containing products.
On February 13, 2009, defendant filed a demurrer to the complaint. In the demurrer, defendant alleged it had obtained a corporate dissolution in accordance with the laws of Delaware on July 1, 2005. It asserted it lacked the capacity to be sued when the present complaint was filed because Delaware General Corporation Law section 278 provides that a dissolved corporation shall continue to exist for purposes of winding up its affairs, including prosecuting and defending lawsuits, for a period of only three years from the date of dissolution. Because plaintiffs' complaint was filed more than three years after the dissolution, defendant claimed the lawsuit was barred.
On March 4, 2009, plaintiffs filed their opposition to defendant's demurrer. They argued the lawsuit was permitted under California Corporations Code section 2010, which they asserted took precedence over Delaware law. After the hearing on the demurrer, defendant was allowed to file a surreply brief, which it did on March 19, 2009.
On May 1, 2009, the trial court sustained defendant's demurrer to the complaint without leave to amend.
On June 2, 2009, the trial court filed its order dismissing the complaint with prejudice. This appeal followed.[1]

*19 DISCUSSION

I. Standard of Review

The resolution of the present case turns on whether California Corporations Code section 2010 applies to a dissolved Delaware corporation. Appellate courts may independently determine the proper interpretation of a statute, as it entails the resolution of a pure question of law. We therefore apply a de novo standard of review. (Farm Raised Salmon Cases (2008) 42 Cal.4th 1077, 1089, fn. 10 [72 Cal.Rptr.3d 112, 175 P.3d 1170].)

II. Alleged Conflict of Law

It is undisputed that the instant lawsuit was filed on December 22, 2008, more than three years after July 1, 2005, the date on which defendant formally dissolved. Relying on North American Asbestos Corp. v. Superior Court (1986) 180 Cal.App.3d 902 [225 Cal.Rptr. 877] (North American II), plaintiffs claim California Corporations Code section 2010 permits lawsuits to be filed against a dissolved foreign corporation irrespective of the date of dissolution. Corporations Code section 2010 provides that "A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it ...." It further states that "No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof."[2] Invoking choice-of-law principles, plaintiffs contend the trial court should have applied California law rather than the three-year limitation contained in title 8, section 278 of the Delaware General Corporation Law.
(1) Analysis of a choice-of-law question proceeds in three steps: "First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. *20 Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law `to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state' [citation], and then ultimately applies `the law of the state whose interest would be the more impaired if its law were not applied.' [Citation.]" (Kearney v. Salomon Smith Barney, Inc. (2006) 39 Cal.4th 95, 107-108 [45 Cal.Rptr.3d 730, 137 P.3d 914].) We note, however, "The fact that two states are involved does not in itself indicate that there is a `conflict of laws' or `choice of law' problem." (Hurtado v. Superior Court (1974) 11 Cal.3d 574, 580 [114 Cal.Rptr. 106, 522 P.2d 666].)

III. Dissolved Corporations at Common Law

"At common law, upon a dissolution, a corporation ceased to exist for any purpose. It could not be bound civilly nor prosecuted criminally any more than a natural person who had died." (J. C. Peacock, Inc. v. Hasko (1960) 184 Cal.App.2d 142, 150 [7 Cal.Rptr. 490]; see also Title Co. v. Wilcox Bldg. Corp. (1937) 302 U.S. 120, 124-125 [82 L.Ed. 147, 58 S.Ct. 125].) In response to this consequence, principles of equity were implemented to create a judicial concept known as the "trust fund doctrine." (Delaney P. & R. Co. v. Crystal etc. Co. (1928) 88 Cal.App. 784, 790-791 [264 P. 521].) This rule allowed creditors an equitable right to follow corporate assets after a dissolution, so that the assets were held in a trust which gave the creditors superior claim to that of the shareholders of the corporation. Over time, jurisdictions found the trust fund doctrine a "fuzzy" concept to implement and legislatures developed "wind-up" statutes, sharp and definite, to regulate corporate liability and obligations postdissolution. (15A Fletcher Cyclopedia of the Law of Corporations (2009) § 7373, pp. 65-69; see Riley v. Fitzgerald (1986) 178 Cal.App.3d 871, 878-879 [223 Cal.Rptr. 889] (Riley).) "[S]hareholders nonetheless possess an important statutory interest in the final and certain termination of their involvement with the affairs of a dissolving corporation." (Pacific Scene, Inc. v. Peñasquitos, Inc. (1988) 46 Cal.3d 407, 416 [250 Cal.Rptr. 651, 758 P.2d 1182].)
(2) Under the Restatement Second of Conflict of Laws, whether a corporation continues its existence after it has dissolved or been suspended is decided by the state of incorporation. (Rest.2d Conf. of Laws, § 299, subd. (1).) This principle applies even where corporate assets are situated elsewhere or all corporate business is conducted in other states. (Rest.2d Conf. of Laws, § 299, subd. (1), com. a, p. 295.) Additionally, states of incorporation will often have "wind-up" statutes that extend corporate life, facilitating the opportunity for creditor claims against the dissolved business; such laws are recognized in other states including the forum state. (Rest.2d Conf. of Laws, § 299, subd. (2), coms. (d) & (e), pp. 295-296.)
*21 Most states, including Delaware, limit the period within which a newly dissolved corporation may sue or be sued postdissolution. Moreover, it is the state of incorporation that will generally control this extended existence based on legislative acquiescence. "But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the State which brought the corporation into being." (Oklahoma Gas Co. v. Oklahoma (1927) 273 U.S. 257, 259-260 [71 L.Ed. 634, 47 S.Ct. 391], italics added; see also Bazan v. Kux Machine Co. (1971) 52 Wis.2d 325, 333-334 [190 N.W.2d 521, 525] [products liability claim]; Johnson v. Helicopter & Airplane Services Corp. (D.Md. 1975) 404 F.Supp. 726, 729 [products liability claim]; Stone v. Gibson Refrigerator Sales Corp. (E.D.Pa. 1973) 366 F.Supp. 733, 734 [products liability claim].)
California's corporation law, howeverspecifically Corporations Code section 2010sets forth no time limitation for suing a dissolved California corporation. Resolution of this case thus turns on whether Corporations Code section 2010 may be applied to corporations incorporated in states, such as Delaware, with statutes that do set time limits on lawsuits involving corporate parties.

IV. Delaware Law Regarding Dissolved Corporations

(3) Delaware courts have held that "the existence or nonexistence of a Delaware corporation is governed by Delaware law." (In re Transamerica Airlines, Inc. (Del.Ch., May 25, 2007, Civ. A. No. 1039-VCP) 2007 Del. Ch. Lexis 68, p. *63.) Section 278 of the Delaware General Corporation Law provides, in part: "All corporations, whether they expire by their own limitation or are otherwise dissolved, shall nevertheless be continued, for the term of 3 years from such expiration or dissolution or for such longer period as the Court of Chancery shall in its discretion direct, [as] bodies corporate for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute to their stockholders any remaining assets, but not for the purpose of continuing the business for which the corporation was organized." (4) Based on this provision, Delaware courts have held that new lawsuits may not be initiated against the dissolved corporation after the three-year period has expired. (In re Dow Chemical Internat., Inc. (Del.Ch., Oct. 14, 2008, Civ. A. No. 3972-CC) 2008 Del. Ch. Lexis 147, p. *2.)
*22 Delaware courts have observed that the state's survival statute may operate to the detriment of parties, such as plaintiffs, whose claims arise after the expiration of the corporate survival period: "This modern scheme still leaves open the question, what, if any, rights are afforded to persons who have no claim against a corporation at the time of its dissolution, or during the statutory wind-up period, but who do thereafter acquire such a claim. Such a person might, for example, be a tort claimant who is injured by an arguably defective product some time after, perhaps years after, the corporation has been dissolved, and its affairs finally wound-up. It would seem apparent that such a person could not sue the dissolved corporation itself. Section 278 continues the corporation's existence beyond the statutory three year winding-up period `solely' for the purpose of concluding pending litigation." (In re RegO Co. (Del.Ch. 1992) 623 A.2d 92, 96.)
In the recent case of Territory of the U.S. Virgin Islands v. Goldman, Sachs & Co. (Del.Ch. 2007) 937 A.2d 760, the creditors of a dissolved Delaware corporation attempted to sue the corporation's former shareholders more than three years after its dissolution. The Delaware court held that because no judgment could be recovered against a dissolved Delaware corporation after the three-year survival limit under Delaware General Corporation Law section 278, a suit could not be maintained against the shareholders of the corporation under Delaware General Corporation Law section 325, subdivision (b).[3] (Goldman, Sachs, supra, at p. 789.)
(5) Courts in other jurisdictions have also held that Delaware General Corporation Law section 278 operates to bar lawsuits brought against dissolved Delaware corporations after the three-year period. "Although not technically a statute of limitations, [section 278] has been held to be `a clear expression of a legislative policy normally prohibiting the commencement of actions by or against dissolved corporations more than three years after their dissolution.' [Citation.] Courts have consistently concluded that upon expiration of the three-year period, the corporation ceases to exist as a legal entity and no claims may be asserted against it. [Citations.] As the complaint in this case was filed in 1994, almost thirteen years after [the corporate defendant] *23 was dissolved, the Town's assertion of state law claims against [the defendant] is prohibited by Delaware law." (Town of Oyster Bay v. Occidental Chemical Corp. (E.D.N.Y. 1997) 987 F.Supp. 182, 211.)
Delaware's three-year survival statute was also enforced by the Second Circuit Court of Appeals. In Marsh v. Rosenbloom (2d Cir. 2007) 499 F.3d 165, the court found that the New York State plaintiffs were barred from asserting a CERCLA[4] claim against a Delaware corporation and the corporation's former shareholders because the three-year survival period had expired before the lawsuit was filed. (Marsh, supra, at pp. 176, 184.) In so holding, the court explained "Delaware's post-dissolution statute ... was enacted in order `to formalize the continued existence of corporate assets and to provide a mechanism for the assertion of claims as part of the "winding up" process ... [continuing] the corporation's existence by operation of law.' [Citation.] Like other post-dissolution statutes, section 278 provides that `any suit against the corporation, which was filed before dissolution or during the three year statutory wind-up period, does not abate, even on the expiration of the wind-up period.' [Citation.] When the wind-up period expires, however, so does the corporation's capacity to be sued." (Id. at pp. 172-173, fn. omitted.)[5]
In Town of Oyster Bay and Marsh, the alleged tortuous conduct predated the dissolution of the particular Delaware corporation. Yet, because the lawsuits were filed more than three years after the enterprises dissolved, the statutory purpose of Delaware General Corporation Law section 278 kicked in. The wind-up period had passed and consequently, the corporations' ability to be held responsible for alleged injury terminated.

V. Conflict in the Court of Appeal

California, as a general rule, has routinely held the law of the state of incorporation determines the consequence of corporate dissolution. Citing the Restatement of Conflict of Laws, one court has noted: "`It appears to be settled law that the effect of the dissolution of a corporation, or its expiration otherwise, depends upon the law of its domicile [citations] ....' [Citations.]" (Macmillan Petroleum Corp. v. Griffin (1950) 99 Cal.App.2d 523, 528 [222 P.2d 69]; see also Fidelity Metals Corp. v. Risley (1946) 77 Cal.App.2d 377, 381 [175 P.2d 592] [and cases cited therein].)
*24 With this background in mind, we proceed to consider the merits of the present case. The parties acknowledge that two California appellate cases published within two months of each other in 1986 frame the issue in this appeal: Riley, supra, 178 Cal.App.3d 871, and North American II, supra, 180 Cal.App.3d 902. Riley holds that California Corporations Code section 2010 does not apply to foreign dissolved corporations. (Riley, supra, at pp. 876-877.) North American II holds that Corporations Code section 2010 conflicts with, and prevails over, foreign corporation laws that limit survival periods of dissolved corporations. (North American II, supra, at pp. 909-910.)

A. North American II

In North American II, the defendant, a dissolved Illinois corporation, had brought a motion for summary judgment on the ground that the plaintiffs' lawsuit was barred because it was filed more than two years after the corporation had dissolved. (North American II, supra, 180 Cal.App.3d 902, 904.) When the complaint was filed, Illinois law provided that the dissolution of a corporation did "not impair any remedy for a liability incurred prior to dissolution `if action or other proceeding thereon is commenced within two years after the date of such dissolution ...' (Ill. Rev. Stat., ch. 32, § 157.94 (1977) ...)" unless a recognized exception applied. (Id. at p. 905.) The corporation had previously filed its articles of dissolution and had received a certificate of dissolution from the Secretary of State of Illinois on May 19, 1978. The lawsuit at issue was filed on December 18, 1980, more than two years later. (Ibid.) After proceeding with a choice-of-law analysis, the appellate court held the trial court was correct in applying California law instead of Illinois law and in denying the motion for summary judgment. Central to this holding was the court's finding that California Corporations Code section 2010 applies to foreign corporations. (North American II, supra, at p. 908.)
Interestingly, the opinion in North American II was a reversal of that same court's reasoning as expressed in North American Asbestos Corp. v. Superior Court (1982) 128 Cal.App.3d 138 [179 Cal.Rptr. 889] (North American I).[6] In arriving at its revised holding, the court in North American II recognized it had stated in North American I that California Corporations Code section 2010 applies only to domestic corporations. (North American II, supra, 180 Cal.App.3d 902, 908.) Following somewhat convoluted reasoning, the court reversed its prior conclusion by turning to former article XII, section 15 of the California Constitution, a provision that was repealed in 1972. (North American II, supra, at p. 908.) That section, adopted in 1879, had stated: "No *25 corporation organized outside the limits of this State shall be allowed to transact business within this State on more favorable conditions than are prescribed by law to similar corporations organized under the laws of this State." The North American II court concluded that, consistent with the constitutional provision, Corporations Code section 2010 was intended to apply to both foreign and domestic corporations when its predecessor was first enacted in 1929.[7] (North American II, supra, at p. 908.) While the court acknowledged definitional sections in the Corporations Code had been amended after 1929 "so that the term `corporation' used in Corporations Code section 2010 could arguably have come to mean only a domestic corporation." (North American II, supra, at p. 908), the court concluded the electorate did not intend to alter the original meaning of Corporations Code section 2010 when it repealed article XII, section 15 of the California Constitution. (North American II, supra, at pp. 908-909.)
(6) Repeating the reasoning of North American II, plaintiffs here contend the 1972 repeal of article XII, section 15 of the California Constitution shows a legislative intent that Corporations Code section 2010 apply to foreign corporations. It is well established, however, that legislative intent should not be resorted to where a statute is clear on its face. "In determining legislative intent, courts look first to the words of the statute itself: if those words have a well-established meaning, as we hold they do here, there is no need for construction and courts should not indulge in it." (Arnett v. Dal Cielo (1996) 14 Cal.4th 4, 24 [56 Cal.Rptr.2d 706, 923 P.2d 1].)

B. Riley

Importantly, the majority in North American II did not acknowledge the conflicting case of Riley, a Second District case that was published some two months earlier. In Riley, the sole shareholders of a Texas corporation had filed a lawsuit on behalf of the corporation after expiration of the three-year postdissolution survival period provided by Texas law. (Riley, supra, 178 Cal.App.3d 871, 873.) On appeal, the plaintiffs claimed California Corporations Code section 2010 created a conflict with the Texas statute and that California law should apply. (Riley, supra, at pp. 875-876.) In disagreeing with this contention, the appellate court in Riley observed: "It is settled law in California that the effect of corporate dissolution or expiration depends upon the law of its domicile, and a defunct foreign corporation has no greater *26 capacity or higher standing to initiate or maintain an action in the forum state than it would have in its domiciliary state." (Id. at p. 876.) Citing to North American I, the court in Riley concluded that Corporations Code section 2010 does not apply to foreign corporations. (Riley, supra, at pp. 876-877.) The court also observed that Corporations Code section 2115 specifies Corporations Code provisions that "apply to foreign corporations to the exclusion of the law of the jurisdiction in which they are incorporated. Conspicuous by its absence is section 2010."[8] (Riley, supra, at p. 876.) The court reasoned that the effect of corporate dissolution or extinguishment depends upon the law of the corporation's domicile. (Ibid.)
Plaintiffs attempt to distinguish Riley because the out-of-state corporate shareholders in that case had brought suit against California residents and entities, whereas North American II, like the case at bar, involved California residents suing a foreign corporation. They claim Riley is therefore not "on point." Plaintiffs also contend that the discussion concerning California Corporations Code section 2010 in Riley was dicta because the plaintiffs in that case "had already stipulated that Texas law applied" and that they had therefore "waived the choice of law issue." While the court in Riley acknowledged the parties stipulated that Texas law applied in the case, the decision holds "even if Rileys did not waive the issue [of choice of law], Texas law would still apply." (Riley, supra, 178 Cal.App.3d 871, 875, italics added.) Plaintiffs still argue that the trial court in the present case was bound to follow North American II and should therefore have overruled defendant's demurrer. We are not persuaded that the trial court erred and, in any event, the argument is inapposite because we are reviewing the issue as a matter of law and are not ourselves bound by other Court of Appeal decisions.
Plaintiffs also rely on Peñasquitos, Inc. v. Superior Court (1991) 53 Cal.3d 1180 [283 Cal.Rptr. 135, 812 P.2d 154]. In that case, the Supreme Court held that parties may bring suit against dissolved corporations for damages that occurred or are discovered after dissolution. Peñasquitos involved homeowners who sued a dissolved California corporation that had improperly graded their housing lots. In concluding that California Corporations Code section 2010 applied, the court described both North American opinions. Significantly, the court did not discuss or disapprove the holding in Riley, even *27 though it was clearly aware of that case as it cited to Riley in a string cite after noting that "[a]t common law, the dissolution of a corporation was treated like the death of a natural person ...." (Peñasquitos, supra, at p. 1184.) As the facts of Peñasquitos did not involve a foreign corporation, the court's discussion of North American II is dicta only, which we are not bound to follow. (People v. Macias (1997) 16 Cal.4th 739, 743 [66 Cal.Rptr.2d 659, 941 P.2d 838].) This court also makes a similar observation of the reference to North American II in the recent case of McCann v. Foster Wheeler LLC (2010) 48 Cal.4th 68, 101 [105 Cal.Rptr.3d 378, 225 P.3d 516].

C. Corporations Code section 2010 does not apply to foreign corporations

(7) California Corporations Code section 102 provides that, with certain exceptions not applicable here, the provisions of the Corporations Code apply to domestic corporations only, and that application to other corporations is permitted only "to the extent expressly included in a particular provision of this division."[9] (Italics added.) Corporations Code section 2010 makes no mention of foreign corporations. In contrast, for example, Corporations Code section 1501 (annual report to shareholders) states at subdivision (g): "This section applies to any domestic corporation and also to a foreign corporation having its principal executive office in this state or customarily holding meetings of its board in this state."
Plaintiffs claim that California Corporations Code section 102 applies to all foreign corporations, relying on subdivision (a)'s reference to "corporations organized under this division." They reason that section 102 sets forth "two categories of corporations": "`corporations organized under this division' "and "`domestic corporations'" not subject to the specified divisions or parts. *28 They further argue that "`corporations organized under this division'" must be read to include foreign corporations because a contrary interpretation would render the statutory language superfluous. The argument is flawed.
In the first place, plaintiffs do not cite to any authority for the proposition that foreign corporations are covered under California's general corporation law division. It is also a substantial stretch to conclude that a corporation from another state can fairly be characterized as one "organized" under the California Corporations Code. Moreover, plaintiffs' position conflicts with Corporations Code section 162, which provides: "`Corporation,' unless otherwise expressly provided, refers only to a corporation organized under this division or a corporation subject to this division under the provisions of subdivision (a) of Section 102." In our view, these statutes evince a clear intent to limit the Corporations Code's general application to domestic corporations.
Further, the Corporations Code does include sections that apply specifically to foreign corporations. Chapter 21 (commencing with § 2100) contains many provisions that apply to foreign corporations. Significantly, as noted by the appellate court in Riley, supra, 178 Cal.App.3d 871, 876, section 2115, which identifies all of the chapters and sections of the Corporations Code that apply to foreign corporations meeting certain threshold requirements, does not mention section 2010.
Again relying on North American II, supra, 180 Cal.App.3d 902, plaintiffs argue that Corporations Code section 2115 "only applies to the `mechanics of corporate life which would ordinarily be directed just to domestic corporations' "(see North American II, supra, at p. 910) and is limited to corporations that meet its threshold requirements. Further, they argue that Corporations Code section 2010 is not the type of "mechanical rule" that one would expect to have been enumerated by Corporations Code section 2115. Suffice it to say, we disagree with the reasoning of North American II, and therefore find this argument to be without merit. Had the Legislature intended for Corporations Code section 2010 to apply to foreign corporations, it would have stated so explicitly.
(8) Clark v. Williard (1934) 292 U.S. 112 [78 L.Ed. 1160, 54 S.Ct. 615] does not compel a different conclusion. In that case the United States Supreme Court upheld a Montana court's conclusion that a Montana statute allowed suit against a dissolved Iowa corporation because the statute provided that all foreign corporations licensed to do business in Montana were subject to all liabilities, restrictions, and duties imposed upon corporations of like character organized under the laws of Montana. (Id. at pp. 115, 119-120.) The same rationale does not apply in the present case because *29 California's Corporations Code does not contain a similar provision. In sum, we conclude Delaware law controls whether defendant is amenable to suit following dissolution. This conclusion obviates the need to proceed any further with a choice-of-law analysis. As the instant lawsuit was filed more than three years after defendant's dissolution, the trial court correctly sustained defendant's demurrer to the complaint.

DISPOSITION
To adopt the interpretation propounded by appellant would render particular sections such as section 102 and section 162 of the California Corporations Code meaningless. With Corporations Code section 2115 as an example, we conclude the Legislature well knew when to expressly apply particular statutes in the code to foreign corporations. Corporations Code section 2010, however, does not do so. The trial court's orders sustaining defendant's demurrer and dismissing the case with prejudice are affirmed.
Margulies, Acting P. J., and Banke, J., concurred.
NOTES
[1] The parties have stipulated to a dismissal of this case. We elect to proceed with the opinion as the appeal has been fully briefed and raises issues warranting an opinion. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 5:63, pp. 5-23 to 5-24 (rev. # 1, 2007).)
[2] The full text of California Corporations Code section 2010 provides:

"(a) A corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of continuing business except so far as necessary for the winding up thereof.
"(b) No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof.
"(c) Any assets inadvertently or otherwise omitted from the winding up continue in the dissolved corporation for the benefit of the persons entitled thereto upon dissolution of the corporation and on realization shall be distributed accordingly."
[3] Section 325 of the Delaware General Corporation Law provides: "(a) When the officers, directors or stockholders of any corporation shall be liable by the provisions of this chapter to pay the debts of the corporation, or any part thereof, any person to whom they are liable may have an action, at law or in equity, against any 1 or more of them, and the complaint shall state the claim against the corporation, and the ground on which the plaintiff expects to charge the defendants personally. [¶] (b) No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which such person is an officer, director or stockholder, until judgment be obtained therefor against the corporation and execution thereon returned unsatisfied."
[4] Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (42 U.S.C. § 9601 et seq.).
[5] Plaintiffs do not cite to a single case holding that a dissolved Delaware corporation may be sued more than three years after the corporation has become dissolved. Instead, they argue that under rules of equity, the Delaware courts have the power to extend the three-year period if the case supports this choice. However, this position was rejected in the case of In re Citadel Industries (Del.Ch. 1980) 423 A.2d 500, 507.
[6] As North American I unanimously stated: "It is clear that the California survival law does not apply to suits against dissolved foreign corporations." (North American I, supra, 128 Cal.App.3d 138, 143.)
[7] Civil Code former section 399. One commentator pointed out that Civil Code former section 399 would not apply to foreign corporations because of the narrow statutory definition of "corporation" then found in Civil Code former section 278. (Note, Foreign Corporations: Continuance of Existence After Dissolution (1947) 35 Cal. L.Rev. 306, 309.) In relevant language, Corporations Code section 2010 and its predecessor Civil Code former section 399 are similar, suggesting no change in legislative intent.
[8] To come within the purview of Corporations Code section 2115, a foreign corporation must meet two prerequisites. First, it must transact more than one-half of its business in California. Second, more than one-half of the corporation's voting securities must be held by persons with California addresses. If section 2115 applies, California law is deemed to control such matters as the annual election of directors, the directors' standard of care, limitations on corporate distributions in cash or property, the requirement for annual shareholders' meetings and remedies for the same if not timely held, limitations on the sale of assets, dissenters' rights, records and reports, actions by the Attorney General and inspection rights. (See Corp. Code, § 2115, subd. (b).)
[9] The full text of Corporations Code section 102 provides:

"(a) Subject to Chapter 23 (commencing with Section 2300) (transition provisions), this division applies to corporations organized under this division and to domestic corporations which are not subject to Division 2 (commencing with Section 5000) or Part 1 (commencing with Section 12000), 2 (commencing with Section 12200), 3 (commencing with Section 13200), or 5 (commencing with Section 14000) of Division 3 on December 31, 1976, and which are not organized or existing under any statute of this state other than this code; this division applies to any other corporation only to the extent expressly included in a particular provision of this division.
"(b) The existence of corporations formed or existing on the date of enactment or reenactment of this division shall not be affected by the enactment or reenactment of this division nor by any change in the requirements for the formation of corporations nor by the amendment or repeal of the laws under which they were formed or created.
"(c) Neither the repeals effected by the enactment or reenactment of this division nor the enactment of this title nor the amendment thereof shall impair or take away any existing liability or cause of action against any corporation, its shareholders, directors, or officers incurred prior to the time of the enactment, reenactment, or amendment."
(See also Corp. Code, § 162.)