IN RE ALL CASES AGAINST SAGER CORPORATION.

[Cite as *In re All Cases Against Sager Corp.,*

132 Ohio St.3d 5, 2012-Ohio-1444.]

*Corporations—Suit against dissolved foreign corporation—Corporate-survival*
*statute of state of incorporation applied—Appointment of receiver for*
*marshaling of liability insurance and for acceptance of service of process*
*denied.*

(No. 2010-1705—Submitted September 21, 2011—Decided April 3, 2012.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 93567,

188 Ohio App.3d 796, 2010-Ohio-3872.

_____

**O'DONNELL, J.**

**{¶ 1}** The principal issue we confront in this appeal is whether the court of appeals correctly affirmed the decision of the trial court to appoint a receiver for Sager Corporation for the purpose of accepting service of process and marshaling assets consisting of unexhausted liability-insurance policies for asbestos-related claims filed against Sager. Sager was an Illinois corporation that filed for dissolution in 1998 and, pursuant to Illinois law, was no longer amenable to suit after 2003. In characterizing its own opinion, the appellate court plainly stated, "The appeal before us has the peculiar procedural posture of the receivership being the only issue." 188 Ohio App.3d 796, 2010-Ohio-3872, 936 N.E.2d 1034, at ¶ 7.

**{¶ 2}** When the trial court appointed a receiver for the Sager Corporation, it concluded that Sager's conduct in Ohio vested the court with jurisdiction to wind up Sager's affairs in Ohio and found that pursuant to R.C. 1701.88(B), Sager had the capacity to be sued under Ohio law. In affirming the

trial court, the appellate court found that R.C. 2735.01(E) provided authority for the trial court to appoint a receiver for a dissolved corporation.

{¶ 3} For the following reasons, the judgment of the appellate court is reversed. Fundamental to our analysis is the principle that we must afford full faith and credit to laws in our sister states and that a dissolved foreign corporation that is no longer amenable to suit in its state of incorporation is likewise not amenable to suit in Ohio. Thus, because these claims had not been commenced against Sager as of June 17, 2003, and no judgment had been entered against it, and because these claimants are now precluded from obtaining a judgment against Sager in this case, the appointment of a receiver to accept service of process and to marshal assets—including unexhausted liability-insurance policies—is barred. In conformity with constitutional requirements of due process and the Full Faith and Credit Clause, the law of the state of incorporation controls whether a corporation is amenable to suit. Here, we apply Illinois corporate law and conclude that claims filed against a dissolved Illinois corporation more than five years after dissolution are barred.

**Facts and Procedural History**

{¶ 4} The Sager Corporation, an Illinois corporation since 1921, manufactured protective clothing and other industrial products containing asbestos, such as gloves, aprons, leggings, jackets, and curtains, and sold some of these to United States Steel in Lorain, Ohio.

{¶ 5} On June 17, 1998, Sager ceased its operations and filed for dissolution in the state of Illinois, commencing a five-year postdissolution period during which Illinois law permitted claims to be asserted against it. That period ended on June 17, 2003.

{¶ 6} On September 4, 2007, Commodore Bowens, suffering from mesothelioma, and executors of the estates of two deceased victims of mesothelioma filed suit in Ohio against Sager and more than 200 other entities for

2

personal injury, loss of consortium, and wrongful death, alleging that their injuries stemmed from exposure to asbestos products.

{¶ 7} On July 1, 2008, after having appeared and participated in discovery in the litigation, Sager moved for summary judgment, asserting that because it had been dissolved and because the five-year period for filing claims against it had expired, it was no longer amenable to suit. In response, the law firm of Bevan & Associates, on behalf of all clients with asbestos-related claims pending against Sager, sought the appointment of a receiver to wind up Sager's corporate affairs in Ohio, asserting that "Sager has insurance policies which have not been exhausted, and are assets of Sager." Sager opposed the motion, urging that the trial court lacked jurisdiction to appoint a receiver for a foreign corporation and arguing that even if it had jurisdiction, it should apply Illinois law, which provides that Sager is no longer amenable to suit, and also arguing that the appointment violated the Due Process, Commerce, and Full Faith and Credit Clauses of the United States Constitution.

{¶ 8} The trial court, relying on R.C. 1701.88(B), appointed a receiver to accept claims and marshal corporate assets, including unexhausted insurance proceeds, and stated in its order, "The defunct corporation persists for the purpose of winding up its affairs in Ohio."

{¶ 9} Sager appealed the appointment to the Eighth District Court of Appeals, which relied on R.C. 2735.01(E) and held that "there is no dispute that corporate assets exist notwithstanding Sager's dissolution and that these assets may afford insurance coverage to Ohioans injured by exposure to Sager's products," so that "the trial court did not abuse its discretion by appointing a receiver in this matter." 188 Ohio App.3d 796, 2010-Ohio-3872, 936 N.E.2d 1034, at ¶ 22. The appellate court also affirmed the trial court's application of Ohio law based on the occurrence of the injury in Ohio and further held that no due process violation had occurred because the appointment of a receiver "does

not extend its corporate life; the receiver 'will merely be a vehicle through which [the asbestos claimants] will seek recovery from the insurers.' " *Id.* at ¶ 21, quoting *In re Texas E. Overseas, Inc.*, Del. Chancery, C.A. No. 4326-VCN, 2010 WL 318266 (Jan. 26, 2010).

{¶ 10} In its memorandum in support of jurisdiction, Sager posed the following proposition: "As a constitutional matter, and as a matter of Ohio statutes and precedent, whether a dissolved corporation is susceptible to suit must be determined by the law of its state of incorporation, not by the law of the forum state." However, in its brief and during oral argument, Sager asserted that R.C. 2735.01 does not authorize an Ohio court to appoint a receiver to wind up the affairs of a foreign corporation or to accept service of process for it, a receiver may not resurrect a dissolved corporation when its only assets consist of liability-insurance policies, a court may not base jurisdiction for a tort claim on the interest of claimants in unexhausted insurance policies, and subjecting a foreign corporation to suit contrary to the law of its state of incorporation violates the Due Process, Commerce, and Full Faith and Credit Clauses of the United States Constitution.

{¶ 11} The claimants principally rely on *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), and 2 Restatement of the Law 2d, Conflict of Laws, Section 146 (1971), urging that Ohio conflict-of-laws analysis requires application of Ohio law to determine whether their claims are barred, not the five-year corporate-survival period provided by Illinois law. They also assert that nothing in the Ohio receivership statute limits its application to domestic corporations, and they claim that if Sager negligently exposed them to asbestos while doing business in Ohio, then they have a right to recover against its remaining asset—unexhausted insurance coverage in Sager's liability policies—regardless of whether it still exists as a corporation. They further assert that Sager failed to argue to the trial court that the unexhausted insurance policies are not

corporate assets and has therefore waived that argument, and they urge that Sager's appearance in this case demonstrates that such insurance proceeds do exist. Finally, they maintain that subjecting Sager to the same laws applicable to domestic corporations does not violate the Due Process, Commerce, and Full Faith and Credit Clauses, because Sager became subject to Ohio law by choosing to conduct business in this state.

{¶ 12} The single matter, however, raised by this appeal is whether the appellate court properly affirmed the decision to appoint a receiver to accept service of process and marshal assets consisting of unexhausted liability-insurance proceeds for a dissolved foreign corporation in this case. It did not.

## Law and Analysis

### *Application of Law*

{¶ 13} Although the trial court relied on R.C. 1701.88(B) as authority to appoint a receiver, we recognize that R.C. 1701.98 restricts the provisions of R.C. 1701.01 to 1701.98 to domestic corporations, except as otherwise provided, and we are unaware of any provision extending its authority to foreign corporations.

{¶ 14} The analysis of the court of appeals applying R.C. 2735.01(E) is more compelling because that section of the code authorizes a common pleas court to appoint a receiver when a corporation has been dissolved. However, as 2 Restatement of the Law 2d, Conflict of Laws, Section 300, explains, "A state, without terminating the existence of a foreign corporation, may wind up its business in the State, *subject to constitutional limitations*." (Emphasis added.) Thus, while the appellate court correctly recognized that a trial court has the authority to appoint a receiver for a foreign corporation to wind up its affairs in Ohio, that authority is limited by our obligation to afford full faith and credit to the laws of other states.

{¶ 15} The United States Constitution, Article IV, Section 1, mandates that full faith and credit be given "to the public Acts, Records, and judicial

Proceedings of every other State." The court in *Oklahoma Natural Gas Co. v. Oklahoma*, 273 U.S. 257, 259-260, 47 S.Ct. 391, 71 L.Ed. 634 (1927), dealing with a dissolved corporation, commented:

> [C]orporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being.

*See also CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 89, 107 S.Ct. 1637, 95 L.Ed.2d 67 (1987) ("No principle of corporation law and practice is more firmly established than a State's authority to regulate domestic corporations * * *"); *Young v. JCR Petroleum, Inc.*, 188 W.Va. 280, 283, 423 S.E.2d 889 (1992).

*Amenability to Suit*

**{¶ 16}** Sager Corporation contends that the law of Illinois controls whether it is amenable to suit in Ohio. The claimants urge application of the discovery rule for their claims because their injuries occurred in Ohio, and therefore Ohio law should be applied. They rely on *Ohayon v. Safeco Ins. Co.*, 91 Ohio St.3d 474, 747 N.E.2d 206 (2001), and 2 Restatement of the Law 2d, Conflict of Laws, Section 146, for the proposition that the rights and liabilities of the parties *with respect to a tort* are determined by the local law of the state where the injury occurred.

**{¶ 17}** We have not previously considered this choice-of-law question in this context.

{¶ 18} In support of the view that a dissolved foreign corporation is amenable to suit, claimants cite *N. Am. Asbestos Corp. v. San Francisco Superior Court*, 180 Cal.App.3d 902, 225 Cal.Rptr. 877 (1986), in which a California appellate court, relying on a California statute, held that a dissolved Illinois corporation could be sued in California. We recognize that a contrary decision has been rendered by a different California appellate court in *Greb v. Diamond Internatl. Corp.*, 184 Cal.App.4th 15, 108 Cal.Rptr.3d 741, 744 (2010), stating that this same statute permitting suit against a dissolved corporation does not apply to out-of-state corporations. The conflict between these rulings is currently pending before the California Supreme Court, 237 P.3d 530, 114 Cal.Rptr.3d 199 (2010).

{¶ 19} The claimants also cite *Dr. Hess & Clark, Inc. v. Metalsalts Corp.*, 119 F.Supp. 427, 429 (D.N.J.1954), which held that a dissolved Illinois corporation, licensed to do business in New Jersey, remained amenable to suit in New Jersey based on a statute that "continues a domestic or foreign corporation after dissolution for the purpose of defending actions brought against it." *Id.* at 428. This latter case is distinguishable, as Ohio has no comparable statute continuing the life of foreign corporations doing business in Ohio.

{¶ 20} In *Chicago Title & Trust Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 58 S.Ct. 125, 82 L.Ed. 147 (1937), the United States Supreme Court applied an Illinois corporate-survival statute in determining that a dissolved Illinois corporation lacked capacity to initiate a proceeding in a bankruptcy court. The court explained:

> [A] private corporation in this country can exist only under the express law of the state or sovereignty by which it was created. Its dissolution puts an end to its existence, the result of which may be likened to the death of a natural person. There must be some

statutory authority for the prolongation of its life, even for litigation purposes.

*Id.* at 124-125. The court went on to examine the Illinois corporate-survival statute, stating:

It is plain enough, under the Illinois statute, that after the expiration of two years from the date of its dissolution, [the corporation] was without corporate capacity to initiate any legal proceeding—including a proceeding under section 77B [of the Bankruptcy Act], unless we are able to say that the statute, in its terms or in its application, is in conflict with section 77B.

*Id.* at 126.

{¶ 21} The court concluded that state and federal law did not conflict, because

[h]ow long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power. The circumstances under which the power shall be exercised and the extent to which it shall be carried are matters of state policy, to be decided by the state Legislature. There is nothing in the Federal Constitution which operates to restrain a state from terminating absolutely and unconditionally the existence of a state-created corporation, if that be authorized by the statute under which the corporation has been organized.

(Citations omitted.) *Id.* at 127-128.

**{¶ 22}** The court went on to hold:

*The only power left to the corporation when this proceeding was brought was to finish pending cases begun within two years after its dissolution. With that exception, its corporate powers were ended for all time and for all purposes.* It was without authority to purchase the certificate issued at the mechanic's lien foreclosure sale, or to adopt resolutions authorizing proceedings under section 77B, or to bring a proceeding to effectuate a reorganization under that section. In respect of these matters the corporation was nonexistent.

(Emphasis added.) *Id.* at 129-130.

**{¶ 23}** In accordance with *Chicago Title*, supreme courts in other states also apply the law of the state of incorporation in deciding whether a dissolved corporation has capacity to be sued in a forum state. *E.g., Casselman v. Denver Tramway Corp.*, 195 Colo. 241, 244, 577 P.2d 293 (1978) ("We hold that the question of whether a foreign corporation can be sued after dissolution depends upon the law of the state of incorporation"); *Owens v. Allied Underwriters*, 207 La. 437, 450, 21 So.2d 490 (1945) ("Since the life of the corporation has been terminated under the laws of Texas, it no longer has the capacity to be sued in Louisiana"); *Halliwell Assocs., Inc. v. C.E. Maguire Servs., Inc.*, 586 A.2d 530, 531-532 (R.I.1991) ("since Halliwell Associates is a Massachusetts corporation, Massachusetts law governs the capacity of a Massachusetts corporation or its shareholders to sue or be sued"); *Meehl ex rel. Eagle Indemn. Co. v. Barr Transfer Co.*, 305 Mich. 276, 283, 9 N.W.2d 540 (1943) ("There is no question but that the dissolution of a corporation is governed by the laws of the State granting its charter"); *Gassert v. Commercial Mechanisms, Inc.*, 277 N.W.2d 392,

393 (Minn.1979) ("We have held that the law of the state of incorporation applies to a dissolved corporation. Since it is undisputed that CMI is a Missouri corporation, the Missouri survival statute applies" [citation omitted]); *Velasquez v. Franz*, 123 N.J. 498, 510, 589 A.2d 143 (1991) ("The choice-of-law question regarding a corporation's capacity to be sued has been answered by reference to the laws of the state of incorporation since long before the rule's incorporation into the federal rules of civil procedure"); *Chaplin v. Selznick*, 293 N.Y. 529, 540, 58 N.E.2d 719 (1944) (the California survival statute "is entitled to recognition and enforcement by the courts of this State"); *Wettengel v. Robinson*, 288 Pa. 362, 370, 136 A. 673 (1927) ("The Riverside Company being a West Virginia corporation, the law of that state governs the status and powers of the corporation and its directors after the surrender of its charter"); *Floerchinger v. Sioux Falls Gas Co.*, 68 S.D. 543, 547, 5 N.W.2d 55 (1942) (applying New Jersey corporation law); *Miller Mgt. Co. v. State*, 140 Tex. 370, 373, 167 S.W.2d 728 (1943) ("The question of whether a foreign corporation continues in existence, after the surrender of its charter, for the purpose of pending suits is to be determined by the statutes and laws of the State in which the corporation was created"); *Bazan v. Kux Machine Co.*, 52 Wis.2d 325, 333, 190 N.W.2d 521 (1971) ("It is the rule that when a corporation becomes defunct by dissolution in the state of its creation, it is defunct in every other state unless such other state has also granted it a charter").

{¶ 24} In addition, Fed.R.Civ.P. 17(b)(2) provides that "[c]apacity to sue or be sued is determined * * * for a corporation, by the law under which it was organized," and the Seventh Circuit Court of Appeals in *Citizens Elec. Corp. v. Bituminous Fire & Marine Ins. Co.*, 68 F.3d 1016 (7th Cir.1995), has applied this rule in holding that Illinois law controls whether a dissolved Illinois corporation has capacity to be sued in federal court. *Accord Marsh v. Rosenbloom*, 499 F.3d 165, 176-177 (2d Cir.2007) (applying Delaware survival statute).

**{¶ 25}** Also, 2 Restatement of the Law 2d, Conflict of Laws, Section 299(1), states, "Whether the existence of a corporation has been terminated or suspended is determined by the local law of the state of incorporation." Section 299 has been cited with approval by the courts in *Hood Bros. Partners, L.P. v. USCO Distrib. Servs., Inc.*, 140 F.3d 1386, 1388 (11th Cir.1998), fn. 1; *Cunard Steamship Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 458 (2d Cir.1985); *Ficor, Inc. v. McHugh*, 639 P.2d 385, 391 (Colo.1982); *Willey v. Brown*, 390 A.2d 1039, 1042 (Me.1978); and *Greb v. Diamond Internatl. Corp.*, 184 Cal.App.4th 15, 108 Cal.Rptr.3d 741, 744 (2010).

**{¶ 26}** We concur. The question of whether a dissolved foreign corporation has the capacity to sue or be sued is a matter determined by the law of the state of incorporation.

**{¶ 27}** In this case, then, we look to Illinois law because Sager incorporated there. Ill.Ann.Stat., Chapter 805, Section 5/12.80, permits claims to be filed against a dissolved Illinois corporation for a period of five years following dissolution:

> The dissolution of a corporation * * * shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within five years after the date of such dissolution.

Applying this statute in *Pielet v. Pielet*, 407 Ill.App.3d 474, 496, 347 Ill.Dec. 403, 942 N.E.2d 606 (2010), the court observed: "[O]nce the survival period has ended, the corporation ceases to exist. Since the corporation at that point no

longer exists, it can no longer be subject to any claim, and any claims not raised against or by the corporation become forfeited."

{¶ 28} Claimants here cannot overcome the lack of existence of the Sager Corporation, nor can they deny the Illinois five-year survival statute, which allowed claims to be commenced against Sager only until June 17, 2003. Because Sager no longer exists and because it no longer has the capacity to be sued, no judgment can be taken against it.

*Appointment of a Receiver*

{¶ 29} We next consider whether a court may appoint a receiver for a dissolved foreign corporation that is no longer amenable to suit as a vehicle to seek recovery directly from the corporation's insurance carriers.

{¶ 30} In *State ex rel. Celebrezze v. Gibbs*, 60 Ohio St.3d 69, 74, 573 N.E.2d 62 (1991), fn. 4, we described a receiver as " '[a]n indifferent person between the parties to a cause, appointed by the court *to receive and preserve the property or fund in litigation*, and receive its rents, issues, profits, and apply or dispose of them at the direction of the court' " (emphasis added), quoting *Black's Law Dictionary* 1268 (6th Ed.1990). Thus, a receiver may preserve and administer assets pending the outcome of litigation. *See* R.C. 2735.04; 3 Ralph Ewing Clark, *A Treatise on the Law and Practice of Receivers*, Section 756.1, at 1419 (3d Ed.1959; 1992 reprint); *accord Scandinavian-Am. Bank v. Wentworth Lumber Co.*, 101 Or. 158, 166, 199 P. 626 (1921). And as the Seventh Circuit Court of Appeals stated in *In re Hawkins Mtge. Co.*, 66 F.2d 16, 18 (7th Cir.1933), "[a] receiver should not be appointed except where there are some assets to be administered." The question then remains as to whether the unexhausted liability-insurance proceeds are assets subject to receivership. They are not.

{¶ 31} In *W. Broad Chiropractic v. Am. Family Ins.*, 122 Ohio St.3d 497, 2009-Ohio-3506, 912 N.E.2d 1093, ¶ 28, we stated, "R.C. 3929.06(B) precludes

an injured person from bringing a civil action against the tortfeasor's insurer until the injured person has first obtained a judgment for damages against the insured and the insurer has not paid the judgment within 30 days." In *Hartford Acc. & Indemn. Co. v. Randall*, 125 Ohio St. 581, 585, 183 N.E. 433 (1932), we explained that a tort claimant has only a potential interest in a liability-insurance policy covering claims against the insured and that potential interest "does not develop into a vested right until a judgment is secured." For this reason, it is only after a judgment has been secured against an insured that " '[t]he amount of the policy to the extent of liability incurred by the insured is deemed to be an asset of the insured.' " *Steffens v. Am. Std. Ins. Co. of Wis.*, 181 N.W.2d 174, 178 (Iowa 1970), quoting 22 Appleman, *Insurance Law and Practice*, Section 14565, at 608 (1947).

{¶ 32} Because Sager lacks capacity to be sued, no judgment can be taken against it. And without a judgment, R.C. 3929.06(B) precludes a direct action against the unexhausted proceeds from any liability-insurance policies and conditions the filing of a supplemental complaint against the insurer upon the entry of a final judgment.

{¶ 33} Accordingly, a receiver may not accept service of process on behalf of Sager, process defenses, or purport to marshal its assets consisting of unexhausted insurance proceeds, because the statute precludes that action until a judgment has been rendered that remains unpaid.

{¶ 34} In *Lilliquist v. Copes-Vulcan, Inc.*, 2011 Pa. Super. 102, 21 A.3d 1233 (App.2011), the trial court had granted summary judgment in favor of SVI, a dissolved Alabama corporation, in connection with Lilliquist's asbestos litigation involving 54 entities. An Alabama statute barred all claims not filed within a two-year period following publication of the notice of corporate dissolution.

{¶ 35} The appellate court affirmed the dismissal of claims against SVI, including the request to appoint a receiver to manage SVI's alleged assets

consisting of insurance funds, holding that because all claims had been barred as a matter of law, no legal right existed for appointment of a receiver.

{¶ 36} Likewise, in *Gilliam v. Hi-Temp Prods. Inc.*, 260 Mich.App. 98, 118, 677 N.W.2d 856 (2003), the Michigan Court of Appeals explained:

> [Insurance policies'] *only* value is the protection they provided from tort liability judgments. * * * If there have been no tort claims triggering claims for defense or indemnification by [the insured], or the deadline for the filing of any claims covered by the policies has expired, the policies are of no value. They cannot be "distributed." They are no longer assets of the corporation.

(Emphasis sic.)

{¶ 37} And further, in *Blankenship v. Demmler Mfg. Co.*, 89 Ill.App.3d 569, 574, 44 Ill.Dec. 787, 411 N.E.2d 1153 (1980), the court also rejected an argument that an insurance policy belonging to a dissolved corporation is an "undistributed corporate asset," stating: "No cause of action which accrues after dissolution may be brought against a dissolved corporation. Thus, the existence of an insurance policy is irrelevant here."

## Conclusion

{¶ 38} The Sager Corporation filed for dissolution in Illinois in 1998, and the Illinois statute permitting claims to be filed against it required claims to be filed on or before June 17, 2003. After that date, Sager was no longer amenable to suit. The authority to appoint a receiver for a dissolved foreign corporation is subject to constitutional limitations, notably the Full Faith and Credit Clause, obliging us to recognize Illinois corporation law as barring claims filed against Sager that were not pending on June 17, 2003. Thus, the court is without

authority to appoint a receiver to "accept the process of claims, process defenses and marshal assets" on behalf of the Sager Corporation, as the trial court ruled.

{¶ 39} Accordingly, the judgment of the court of appeals is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and LUNDBERG STRATTON, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

PFEIFER, J., dissents.

_____

**PFEIFER, J., dissenting.**

{¶ 40} I dissent. I would adopt the opinion of the court of appeals, which held that R.C. 2735.01(E) provides authority for the trial court to appoint a receiver for the dissolved Illinois corporation in this case. The appointment of a receiver would allow the insurance policies that Sager Corporation paid for to do what Sager intended that they do: cover insured risks that arose in Ohio within the applicable coverage period. The appointment of a receiver for that purpose would do no harm to the dissolved corporation or its shareholders, thus leaving the philosophical underpinnings of the Illinois survival statute unscathed.

{¶ 41} In *In re Texas E. Overseas, Inc.*, Del. Chancery, C.A. No. 4326-VCN, 2009 WL 4270799 (Nov. 30, 2009), *aff'd*, 998 A.2d 852 (Del.2010), a party petitioned the court to appoint a receiver for Texas Eastern Overseas ("TEO"), a corporation that had been dissolved for 15 years and was beyond Delaware's three-year survival period for claims against it, to obtain contribution from its insurers in the event that TEO was found liable for environmental pollution in a pending federal action. The Delaware court addressed whether allowing the appointment of a receiver would undermine the purpose of its three-

year limit on claims against dissolved corporations. The court noted that the survival statute "was intended to balance the public policy interest of providing adequate time for potential claimants to bring suit against a dissolved corporation with the countervailing consideration of 'allowing directors, officers, and stockholders to be free from claims relating to the dissolved corporation after sufficient time has passed.' " *Id.* at \*5, quoting *In re Dow Chem. Internatl. Inc.*, Del. Chancery, C.A. No. 3972-CC, 2008 WL 4603580, \*2 (Oct. 14, 2008). The court held that allowing the appointment of a receiver would not jeopardize those policy concerns, because any recovery would be limited to corporate assets, i.e., insurance proceeds, and that the receiver would have no claim to corporate assets distributed in the dissolution process or any separate claim against former shareholders, directors, or officers.

{¶ 42} Likewise, here, there is no threat to directors, officers, or stockholders of the Illinois corporation. This court should thus conclude that the policy concerns of the Illinois survival statute would not be implicated by the appointment of a receiver to process insurance coverage for injured Ohioans.

_____

Ulmer & Berne, L.L.P., Bruce P. Mandel, and Max Thomas; and Troutman Sanders, L.L.P., and Patrick F. Hofer, for appellant.

Bevan & Associates, L.P.A., Inc., Thomas W. Bevan, Patrick M. Walsh, and Joshua P. Grunda, for appellees.

Shook, Hardy & Bacon, L.L.P., Victor E. Schwartz, Mark A. Behrens, and Cary Silverman, urging reversal for amici curiae the Ohio Insurance Institute, Coalition for Litigation Justice, Inc., Property Casualty Insurers Association of America, National Association of Mutual Insurance Companies, and American Insurance Association.

Weston Hurd, L.L.P., Daniel A. Richards, Shawn W. Maestle, and Melanie R. Shaerban, urging reversal for the Ohio Association of Civil Trial Attorneys.

_____