**In the Matter of KRAFFT–MURPHY COMPANY, INC., a dissolved Delaware Corporation.**

**C.A. No. 6049–VCP.**

Court of Chancery of Delaware.

Submitted: Oct. 23, 2012.
Decided: Feb. 4, 2013.

Raeann Warner, Esq., Jacobs & Crumplar, Wilmington, Delaware; Jennifer L. Lilly, Esq., The Law Offices of Peter G. Angelos, Baltimore, Maryland; Attorneys for Petitioners.

Jeffrey P. Wasserman, Esq., Ciconte, Wasserman & Scerba, LLC, Wilmington, Delaware; Daniel A. Brown, Esq., Eileen M. O'Brien, Esq., Brown & Gould, LLP, Bethesda, Maryland; Attorneys for Petitioners.

Francis J. Murphy, Esq., Murphy & Landon, Wilmington, Delaware; Joseph L. Ruby, Esq., Lewis Baach PLLC, Washington, D.C.; Attorneys for Krafft–Murphy Company, Inc., a dissolved Delaware Corporation.

## OPINION

PARSONS, Vice Chancellor.

This matter is before me on opposing motions for summary judgment and judgment on the pleadings related to a petition for the appointment of a receiver for a dissolved Delaware corporation. The respondent is a former corporation that was involved for decades in the business of plastering and spray insulating. Due to

the nature of its business, the respondent has been subject to hundreds of asbestos-related tort suits. The respondent dissolved in 1999, seven years after ceasing operations.

The respondent has moved in other courts to dismiss those asbestos-related tort suits that were filed more than ten years after its dissolution. The petitioners filed this action seeking the appointment of a receiver for respondent based on the perceived existence of undistributed assets in the form of liability insurance coverage.

Importantly, this case provides cause for the Court to address a question that has not yet been squarely addressed in Delaware law; namely, whether a receiver should be appointed more than ten years after the dissolution of a Delaware corporation where the dissolved corporation's only assets are liability insurance policies. The law is clear that appointment of a receiver may be made at any time where a dissolved corporation has undistributed assets. The first inquiry, therefore, is whether insurance liability contracts are undistributed assets of a Delaware corporation that has been dissolved for more than ten years. To resolve that question, I also must determine whether such a dissolved corporation is amenable to suits brought more than ten years after dissolution.

Having examined Delaware's corporate scheme of dissolution, I conclude that the respondent is not amenable to asbestos-related tort suits commenced more than ten years after its dissolution. Consequently, in the circumstances of this case,

the insurance contracts are valueless. Because the respondent does not have any undistributed assets, I find appointment of a receiver unnecessary. For the reasons stated in this Opinion, therefore, I grant the respondent's motion for summary judgment and deny the petitioners' motion for judgment on the pleadings.

## I. BACKGROUND

### A. The Parties

Petitioners are asbestos claimants represented by the Law Offices of Peter G. Angelos ("Claimants" or "Petitioners"),[1] who have pending individual claims against Respondent, Krafft–Murphy Company, Inc. ("Krafft–Murphy" or "Respondent" or the "Company"), in other asbestos-related personal injury actions.

Krafft–Murphy is a dissolved Delaware corporation. Before its dissolution, Krafft–Murphy was involved in the business of plastering and spray insulating in Maryland, Virginia, and Washington, D.C. Krafft–Murphy has been subject to hundreds of asbestos-related personal injury lawsuits over the last two decades.

Although they are not named parties in this action, the alleged "real parties in interest" sponsoring the litigation for Respondent are various insurance companies obligated to defend and settle asbestos-related claims against Krafft–Murphy under liability insurance contracts purchased while Krafft–Murphy was in operation. The real parties in interest, therefore, are: (1) Travelers Casualty and Surety Compa-

1. Although the original petition for appointment of a receiver was filed by the Law Offices of Peter G. Angelos and its clients, the claimants represented by Brown & Gould, LLP moved to intervene in this action on June 15, 2011. I granted that motion on July 1, 2011. The Brown & Gould petitioners have adopted and incorporated by reference the Opposition to Krafft–Murphy's Motion and the Motion for Judgment on the Pleadings filed by the Petitioners represented by the Law Offices of Peter G. Angelos. Because all of the parties seeking appointment of a receiver in this action have essentially identical interests and claims, I refer to them collectively as "Petitioners."

ny; (2) CNA Insurance Company, formerly Continental Casualty Company; and (3) Great American Insurance Company (collectively, the "Insurers").[2]

## B. Facts[3]

Krafft–Murphy was incorporated under the laws of Delaware in 1952.[4] During its existence as a plastering contractor, Krafft–Murphy is alleged to have applied an asbestos product called Sprayed Limpet Asbestos.[5] Beginning as early as 1989 or 1990, Krafft–Murphy has been subject to hundreds of personal injury asbestos lawsuits alleging that Krafft–Murphy caused asbestos-related injuries. Krafft–Murphy ceased operations in 1991,[6] and in 1999 it filed a certificate of dissolution pursuant to 8 *Del. C.* § 275.[7] Krafft–Murphy did not provide notice of its dissolution to creditors or other interested parties, and its directors did not adopt a formal plan of dissolution.

Krafft–Murphy obtained liability insurance from the Insurers during its operation, and those contracts obligated the Insurers to defend Krafft–Murphy from suits seeking damages that would be covered by those policies.[8] Those policies also obligated Krafft–Murphy to assist in the investigation, settlement, or defense of any claim or suit against it.[9] Before and since its dissolution, Krafft–Murphy, under the direction of the Insurers, has defended and settled the asbestos-related claims brought against it.

On July 26, 2010, Krafft–Murphy filed a motion to dismiss the claims against it in an action in the Circuit Court for Baltimore City arguing that it could not be sued because it had been dissolved for longer than three years, was no longer a legal person under applicable Delaware law, and, therefore, was no longer subject to suit.[10] Krafft–Murphy has moved to dismiss later cases filed against it on similar grounds.

## C. Procedural History

On December 6, 2010, Petitioners filed a Verified Petition for Appointment of Receiver for a Dissolved Corporation Pursuant to 8 *Del. C.* § 279 (the "Petition"). On February 28, 2011, Krafft–Murphy moved to dismiss the Petition pursuant to Court of Chancery Rules 12(b)(5) and 12(b)(6). In response, Petitioners moved to perfect service by publication pursuant to 10 *Del. C.* § 3111(b) and Rule 4(d)(4), or, alternatively, under Rule 4(d)(7). On November 9, 2011, I granted the motion to perfect service of process on Krafft–Murphy, but denied Krafft–Murphy's motion to dismiss the Petition.

On August 1, 2012, Krafft–Murphy moved for summary judgment in this action. Petitioners responded by filing (1) a brief in opposition to that motion and (2) their own motion for judgment on the pleadings. After full briefing on the two

**2.** *See* Answer of Krafft–Murphy to Intervenors' Pet. for Appointment of Receiver.

**3.** Unless otherwise noted, the facts set forth in this Opinion are undisputed and taken from the verified pleadings, admissions, affidavits, and other evidence submitted to the Court.

**4.** Pet. Ex. 1.

**5.** *See id.* Ex. 4 at 4, 9, Ex. 5 at 38–49, Ex. 6, Ex. 7, Ex. 9.

**6.** *Id.* Ex. 3.

**7.** *Id.* Ex. 2.

**8.** *See* Aff. of Joseph L. Ruby in Supp. of Opening Br. of Resp't Krafft–Murphy, Inc.'s Mot. for Summ. J. ("Ruby Aff.") Exs. B, C, D, and E.

**9.** *See id.*

**10.** Pet. Ex. 14.

motions, I heard argument on October 23, 2012. This Opinion constitutes my ruling on both motions.

## D. The Motion to Dismiss Memorandum Opinion

Because both Petitioners and Respondent rely on various statements in my November 9, 2011 Memorandum Opinion [11] denying Krafft–Murphy's motion to dismiss, I review that opinion briefly. I initially considered whether Petitioners had alleged sufficient facts to warrant the appointment of a receiver under 8 *Del. C.* § 279. Section 279 states, in part, that the Court of Chancery may appoint a receiver

on application of any creditor, stockholder or director of the corporation, or any other person who shows good cause therefor, *at any time* . . . to do all other acts which might be done by the corporation, if in being, that *may be necessary for the final settlement of the unfinished business of the corporation.*[12]

Ultimately, I concluded that the Company might possess active insurance contracts, and that those contracts conceivably might represent undistributed assets of the Company, sufficient for the appointment of a receiver. I also found that the insurance contracts and the Insurers' litigation of claims arising under those contracts might represent "an informal plan of dissolution" that consisted of having the insurance companies with which Krafft–Murphy had liability insurance contracts continue to represent it in its pending and expected future asbestos-related litigation until the Company exhausted its coverage. Finally, I found that Krafft–Murphy had not shown

that the statutory language of Section 281(b) and Section 279, or the overall statutory scheme for dissolution, compels the conclusion that there is an absolute bar against the appointment of a receiver for the sole purpose of allowing claimants to bring claims against a dissolved corporation more than ten years after its dissolution.

## E. Parties' Contentions

Krafft–Murphy's overarching argument is that the appointment of a receiver is unwarranted because Krafft–Murphy's liability insurance contracts are not assets of the Company. Specifically, Krafft–Murphy argues that liability insurance would be an asset only if Krafft–Murphy were amenable to suits brought after ten years. In their view, the Delaware statutory scheme of dissolution contemplates that a dissolved corporation loses the ability to sue and be sued after the passage of time, typically three years under 8 *Del. C.* § 278, unless the Court of Chancery, in its discretion and based on an application within the three-year period, specifies a longer period. Respondent further asserts that, for purposes of being sued for tort liability, Delaware did not intend for corporations formed and later dissolved under its laws to be exposed to liability on claims made more than ten years after the date of dissolution. Krafft–Murphy also argues that appointment of a receiver in this case would contravene the bar on direct actions against insurers and that a receiver cannot be appointed where the corporation continues to manage its own affairs.[13]

11. *In re Krafft–Murphy Co.*, 2011 WL 5420808 (Del.Ch. Nov. 9, 2011).

12. 8 *Del. C.* § 279 (emphasis added).

13. In addition, Krafft–Murphy contends that it is entitled to summary judgment because Petitioners failed to prove the facts necessary

to establish a viable claim under the potential scenario identified in this Court's Memorandum Opinion denying Krafft–Murphy's motion to dismiss. In their response briefs, Petitioners argued solely that they are entitled to the appointment of a receiver as a matter of law.

Petitioners dispute all of Krafft–Murphy's contentions and urge the Court to appoint a receiver on behalf of Krafft–Murphy pursuant to Section 279. Petitioners rely heavily on this Court's decision in *In re Texas Eastern Overseas, Inc.* (*"TEO"*) [14] to support the appointment of a receiver. Petitioners also argue that the plain language of 8 *Del. C.* § 279 allows the appointment of a receiver "at any time," including after the three-year wind-up period or after the ten-year period referenced in Section 281. Finally, Petitioners aver that the appointment of a receiver is warranted because Krafft–Murphy actively seeks dismissal of claims that were filed against the Company more than ten years after its dissolution.

## II. ANALYSIS

### A. Standard

#### 1. Summary Judgment

"Summary judgment is granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." [15] In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence are to be viewed in the light most favorable to the nonmoving party and the moving party has the burden of demonstrating that no material question of fact exists. [16] The party opposing summary judgment, however, may not rest upon the mere allegations or denials contained in its pleadings, but must offer, by affidavit or other admissible evidence, specific facts showing that there is a genuine issue for trial. [17] In addition, summary judgment may be denied when the legal question presented needs to be assessed in the "more highly textured factual setting of a trial" [18] or the Court "decides that a more thorough development of the record would clarify the law or its application." [19]

■ A Rule 12(c) motion for judgment on the pleadings is similar, but not identical. Court of Chancery Rule 12(c) provides: "After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A party is entitled to judgment on the pleadings when, accepting as true and drawing all reasonable inferences from the nonmoving party's well-pled facts, "there is no material fact in dispute and the moving party is entitled to judgment under the law." [20]

14. 2009 WL 4270799 (Del.Ch. Nov.30, 2009), *aff'd,* 998 A.2d 852, 2010 WL 2540814 (Del. 2010) (TABLE).

15. *Twin Bridges Ltd. P'ship v. Draper,* 2007 WL 2744609, at *8 (Del.Ch. Sept. 14, 2007) (citing Ct. Ch. R. 56(c)).

16. *Walker L.L.P. v. Spira Footwear, Inc.,* 2008 WL 2487256, at *3 (Del.Ch. June 23, 2008) (citing *Senior Tour Players 207 Mgmt. Co. v. Golftown 207 Hldg. Co.,* 853 A.2d 124, 126 (Del.Ch.2004)).

17. *Id.* (citing *Levy v. HLI Operating Co.,* 924 A.2d 210, 219 (Del.Ch.2007)); Ct. Ch. R. 56(e).

18. *Schick Inc. v. Amalgamated Clothing & Textile Workers Union,* 533 A.2d 1235, 1239 n. 3 (Del.Ch.1987) (citing *Kennedy v. Silas Mason Co.,* 334 U.S. 249, 257, 68 S.Ct. 1031, 92 L.Ed. 1347 (1948)).

19. *Tunnell v. Stokley,* 2006 WL 452780, at *2 (Del.Ch. Feb. 15, 2006) (quoting *Cooke v. Oolie,* 2000 WL 710199, at *11 (Del.Ch. May 24, 2000)).

20. *In re Seneca Invs. LLC,* 2008 WL 4329230, at *2 (Del.Ch. Sept. 23, 2008) (quoting *Warner Commc'ns Inc. v. Chris–Craft Indus. Inc.,* 583 A.2d 962, 965 (Del.Ch.1989), *aff'd,* 567 A.2d 419, 1989 WL 136971 (Del.1989) (TABLE)).

In this case, the parties have presented the pending issues essentially as if they had filed cross motions for summary judgment. They have not argued that there is any issue of material fact. Thus, this situation is somewhat analogous to cross motions for summary judgment for which Rule 56(h) authorizes the Court to "deem the motions to be the equivalent of a stipulation for decision on the merits based on the record submitted with the motions." [21]

### 2. Statutory Interpretation

■ In interpreting a statute, Delaware courts must "ascertain and give effect to the intent of the legislature." [22] "If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls." [23] "The fact that the parties disagree about the meaning of the statute does not create ambiguity." [24] Rather, a statute is ambiguous only if it "is reasonably susceptible of different interpretations," [25] or "if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature." [26] If a statute is ambiguous, however, courts should consider the statute as a whole, rather than in parts, and read each section in light of all others to produce a harmonious whole. [27] Courts also should ascribe a purpose to the General Assembly's use of statutory language, and avoid construing it as surplusage, if reasonably possible. [28]

### B. Statutory Scheme of Dissolution

■ Before turning to the facts of this case, it is useful to review the history and statutory scheme of dissolution. Under common law, the dissolution of a corporation "was its civil death; not only could a corporation not thereafter be sued, but pending suits against it abated." [29] "[D]issolution thus stood as a substantial risk to corporate creditors, threatening to deprive them of a party to sue on their claims." [30] Therefore, "statutory authority is necessary to prolong the life of a corporation past its date of dissolution." [31] That authority is provided by 8 *Del. C.* § 278. [32]

■ Section 278 provides that a dissolved corporation automatically continues for a term of three years following the corporation's dissolution "or for such longer period as the Court of Chancery shall in its discretion direct." A dissolved corporation shall continue "for the purpose of prosecuting and defending suits, whether civil, criminal or administrative, by or against them, and of enabling them gradually to settle and close their business, to dispose of and convey their property, to discharge their liabilities and to distribute

**21.** *Firemen's Ins. Co. of Washington, D.C. v. Birch Pointe Condo. Ass'n, Inc.,* 2009 WL 1515550, at *3 (Del.Ch. May 29, 2009) (quoting Ct. Ch. R. 56(h)).

**22.** *In re Adoption of Swanson,* 623 A.2d 1095, 1096 (Del.1993).

**23.** *Ins. Commr. of Del. v. Sun Life Assurance Co. of Can. (U.S.),* 21 A.3d 15, 20 (Del.2011).

**24.** *Chase Alexa, LLC v. Kent Cty. Levy Ct.,* 991 A.2d 1148, 1151 (Del.2010).

**25.** *Centaur P'rs, IV v. Nat'l Intergroup, Inc.,* 582 A.2d 923, 927 (Del.1990).

**26.** *LeVan v. Independence Mall, Inc.,* 940 A.2d 929, 933 (Del.2007).

**27.** *Taylor v. Diamond State Port Corp.,* 14 A.3d 536, 538 (Del.2011).

**28.** *Id.*

**29.** *In re RegO Co.,* 623 A.2d 92, 95 (Del.Ch. 1992).

**30.** *Id.*

**31.** *In re Citadel Indus., Inc.,* 423 A.2d 500, 503 (Del.Ch.1980).

**32.** *Id.*

to their stockholders any remaining assets...." [33] Actions commenced within the three-year period do not abate, and continue indefinitely until their conclusion. After the expiration of the three-year period or any extension of it, however, "the only judgments that could be entered against the dissolved corporation were for claims that were brought before that period expired." [34] "The intention of the statute was therefore to balance the competing public policy interests of ensuring that claimants against the corporation had a time period in which to assert claims against the dissolved corporation and ensuring that directors, officers, and stockholders of a dissolved corporation could have repose from claims regarding the dissolved corporation." [35] The latter interest of ensuring repose is addressed in 8 *Del. C.* §§ 280–282, discussed *infra.*

Section 279 permits the Court of Chancery to appoint a receiver for a dissolved corporation. It provides, in relevant part, that the Court

> on application of any creditor, stockholder or director of the corporation, or any other person who shows good cause therefor, *at any time,* may either appoint 1 or more of the directors of the corporation to be trustees, or appoint 1 or more persons to be receivers, of and for the corporation, to take charge of the corporation's property, and to collect the debts and property due and belonging to the corporation, with power to prosecute and defend, in the name of the corpora-

tion, or otherwise, all such suits as may be necessary or proper for the purposes aforesaid, and to appoint an agent or agents under them, and to do all other acts which might be done by the corporation, if in being, *that may be necessary for the final settlement of the unfinished business of the corporation.* [36]

According to the Court in *In re Citadel Industries, Inc.,* [37] "[t]he language of 8 *Del. C.* § 279 implies that its primary purpose is to safeguard the collection and administration of still existing property interests of a dissolved corporation. It functions primarily for the benefit of shareholders and creditors where assets remain undisposed of after dissolution." [38] The Court in *Citadel* also observed that, "[w]here there are no undistributed assets against which to effect a recovery, § 279 provides little solace to one possessing an after-discovered claim against a dissolved corporation." [39]

■ Sections 280–282 of the Delaware General Corporation Law ("DGCL") "created a detailed process, which entails judicial involvement, by which dissolving corporations can essentially smoke out claims, pay off claims in accordance with statutory priorities, and establish reserves for contingent claims." [40] This Court in *In re Transamerica Airlines, Inc.* [41] observed:

> The purpose of sections 280 to 282 is to provide a judicial mechanism to afford fair treatment to foreseeable future, yet unknown, claimants of a dissolved corporation, while providing corporate directors with a mechanism that will both

---

33. 8 *Del. C.* § 278.

34. *See U.S. V.I. v. Goldman, Sachs & Co.,* 937 A.2d 760, 789 (Del.Ch. Dec. 20, 2007), *aff'd,* 956 A.2d 32 (Del.2008) (TABLE).

35. *Id.*

36. 8 *Del. C.* § 279 (emphasis added).

37. 423 A.2d 500 (Del.Ch.1980).

38. *Id.* at 506.

39. *Id.*

40. *See U.S. V.I. v. Goldman, Sachs & Co.,* 937 A.2d at 798.

41. 2006 WL 587846 (Del.Ch. Feb. 28, 2006).

permit distributions on corporate dissolution and avoid risk that a future corporate claimant will, at a later time, be able to establish that such distribution was in violation of a duty owed to the corporation's creditors on dissolution.[42]

A dissolving corporation can select one of two procedures upon dissolution: (1) the elective procedures in Sections 280 and 281(a); or (2) the default procedure under Section 281(b).[43]

 The elective procedures in Sections 280 and 281(a) provide a process whereby, if the Court of Chancery approves security provisions for corporate claimants, the directors and shareholders will be protected from potential future claims arising from the decision to distribute the corporation's assets on dissolution.[44] As the Court stated in *In re RegO Co.*,[45] "[i]n barest outline [Sections 280 and 281(a) ] call[ ] for notice for the presentation of claims to the dissolved corporation; the rejection of, or the offering of security with respect to any claims presented; and the furnishing of notice of rights to petition for the appointment of a receiver."[46] Specifically, Section 280(c)(3) states that a dissolving corporation

> shall petition the Court of Chancery to determine the amount and form of security which will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 5 years after the date of dissolution or

such longer period of time as the Court of Chancery may determine not to exceed 10 years after the date of dissolution.

The default procedure under Section 281(b), on the other hand, requires that a dissolving corporation,

> prior to the expiration of the period described in § 278 of this title, adopt a plan of distribution pursuant to which the dissolved corporation ... shall make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 10 years after the date of dissolution.

Whether the parties comply with the elective or default procedures, "[d]irectors of a dissolved corporation ... which has complied with [Sections 281(a) or 281(b) ] shall not be personally liable to the claimants of the dissolved corporation."[47] Nevertheless, "compliance with subsection (b)'s standard, reasonably likely to be sufficient' will, in principle at least, always be litigable. Thus, reliance upon the mechanism of Section 281(b) may present a risky situation for corporate directors regardless of their good faith and due care."[48]

## C. The Insurance Contracts in This Case Are Not Undistributed Assets, and, Therefore, Appointment of a Receiver Is Unwarranted

 While this Court may appoint a receiver "at any time," that appointment

---

42. *Id.* at * 7.

43. *Id.*

44. *In re RegO Co.*, 623 A.2d 92, 97 (Del.Ch. 1992).

45. *Id.*

46. *Id.*

47. 8 *Del. C.* § 281(c).

48. *In re RegO Co.*, 623 A.2d at 97.

must be for a statutory purpose, such as for the "benefit of shareholders and creditors where assets remain undisposed of after dissolution."[49] Absent other justifications for the appointment of a receiver, this Court, therefore, must determine whether there are undistributed assets. If there are no undistributed assets and no other need is identified for a receiver to do what "may be necessary for the final settlement of the unfinished business of the corporation," there would be no basis to appoint a receiver.

■ "Asset" is defined in Black's Law Dictionary as "[a]n item that is owned and has *value*."[50] There is no dispute that Krafft–Murphy owns relevant insurance policies. Respondent raises a legitimate question, however, as to whether, in the context of Petitioners' request for a receiver, those policies would have value. An insurance contract only can have value, and, thus, be an asset, if the company holding that contract can be held liable to a third party. As the Michigan Court of Appeals articulated, an insurance contract's "only *value* is the protection [it] provide[s] from tort liability judgments."[51] Similarly, the Ohio Supreme Court stated that "it is only after a judgment has been secured against an insured that [t]he amount of the policy to the extent of liability incurred by the insured is deemed to be an asset of the insured.'"[52] The insurance policies in this case state that the insurer agrees "to pay on behalf of the insured all sums which the insured *shall become legally obligated to pay* as damages because of bodily injury caused by an occurrence."[53]

In other words, these insurance contracts provide indemnification to Krafft–Murphy *in the event* it is found liable for a bodily injury. If, for example, there were no lawsuits against Krafft–Murphy, the insurance contracts would have no value and could not be distributed. I therefore consider next whether Krafft–Murphy was exposed to potential tort liability for asbestos-related claims that were not asserted against it until more than ten years after Krafft–Murphy was dissolved.

■ As previously discussed, at common law, the effect of dissolution was "corporate death" and statutory authority was required to change that harsh result.[54] In contrast, some states, such as California and New Jersey, statutorily provide for the endless continuation of a dissolved corporation.[55] Delaware is not one of those states.

Both Petitioners and Respondent agree that the Delaware legislature intended to extend a dissolved corporation's existence for at least three years. Krafft–Murphy contends that corporate liability extends for at most ten years, and, perhaps, for as few as three years. Because Krafft–Murphy seeks to dismiss only those lawsuits filed more than ten years after its dissolu-

---

**49.** *In re Citadel Indus., Inc.*, 423 A.2d 500, 506 (Del.Ch.1980).

**50.** Black's Law Dictionary 124 (8th ed.2004) (emphasis added).

**51.** *Gilliam v. Hi–Temp Prods., Inc.*, 260 Mich. App. 98, 677 N.W.2d 856, 870 (2003) (emphasis added).

**52.** *In re All Cases Against Sager Corp.*, 132 Ohio St.3d 5, 14, 967 N.E.2d 1203 (Ohio 2012) (quoting *Steffens v. Am. Standard Ins. Co.*, 181 N.W.2d 174, 178 (Iowa 1970)).

**53.** *See* Ruby Aff. Ex. D (emphasis added); *accord* Ruby Aff. Exs. B, C, E.

**54.** *In re RegO Co.*, 623 A.2d 92, 95 (Del.Ch. 1992); *In re Citadel Indus., Inc.*, 423 A.2d at 503.

**55.** Cal. Corp.Code § 2010; N.J. Stat. Ann. § 14A:129.

tion,[56] I limit my analysis in this Opinion to whether Krafft–Murphy, as an entity, could be held liable for claims brought more than ten years after dissolution.

Petitioners contend that corporate liability in Delaware is perpetual, noting that "nothing in the Delaware legislative scheme acts to cut off corporate liability at a definitive date."[57] In response, Krafft–Murphy argues that corporate liability cannot exist for claims that were not asserted until more than ten years after dissolution. Under 8 *Del. C.* § 278, the existence of a dissolved Delaware corporation continues for three years after dissolution, absent an extension of that period by the Court. The Delaware legislature, therefore, expressed a clear intent to extend corporate liability for at least three years or as long as the corporation existed under Section 278, if not longer. Indeed, it appears likely that the legislature intended to recognize the potential for corporate liability based on claims asserted as late as five to ten years after dissolution, as evidenced by 8 *Del. C.* §§ 280–282 of the DGCL.[58] There is no evidence, however, that the legislature intended to extend corporate liability beyond ten years, or, as Petitioners contend, indefinitely.

 Delaware is not a state where corporate existence continues without limitation, but rather a state where the directors, officers, and stockholders of a dissolved corporation have repose for claims brought after a set period of time. Here, Petitioners have not presented, and this Court is not aware of, any statutory authority that would extend liability for a dissolved Delaware corporation beyond ten years.

Because Krafft–Murphy and its directors, officers, and stockholders would

**56.** The Insurers stipulated at argument that they would not seek to dismiss those suits filed within ten years of dissolution. Tr. 11–12. I have relied on that stipulation in rendering this decision.

Accordingly, this action does not present any issue as to whether the appointment of a receiver would be warranted if Krafft–Murphy sought dismissal of underlying suits that were filed within the ten-year period. Moreover, that issue is not ripe for determination because it depends upon on a factual scenario that is hypothetical and speculative. "Delaware law requires that a justiciable controversy exist before a court can adjudicate properly a dispute brought before it." *Crescent/Mach I P'rs L.P. v. Dr. Pepper Bottling Co. of Tex.*, 962 A.2d 205, 208 (Del.2008).

**57.** Pet'rs' Br. in Opp'n to Mot. for Summ. J. ("Pet'rs' Answering Br.") 25.

**58.** One interpretation of Sections 280–282 is that directors may be liable to creditors and, perhaps, others if they do *not* make provisions for claims that are likely to arise or to become known to the corporation or any successor entity within ten years after the date of dissolution. One implication of the ten-year time period is that directors are not personally liable for claims brought outside of that period.

Moreover, the elective procedure under 8 *Del. C.* § 280 and 281(a) directs the Court of Chancery "to determine the amount and form of security which will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the corporation or that have not arisen but that, based on facts known to the corporation or successor entity, are likely to arise or to become known to the corporation or successor entity within 5 years after the date of dissolution or such longer period of time as the Court of Chancery may determine *not to exceed 10 years after the date of dissolution.*" 8 Del. C. § 280(c)(3). This final phrase suggests that the drafters did not intend for corporations to provide for claims brought more than ten years after dissolution.

Indeed one reasonable reading of *TEO*, 2009 WL 4270799 (Del.Ch. Nov. 30, 2009), aff'd, 998 A.2d 852, 2010 WL 2540814 (Del. 2010) (TABLE), is that the appointment of a receiver was justified on the basis that the claims in that case were brought within ten years. *See infra* Part II.D.

not be liable for tort suits of the kind at issue here brought after ten years, the Insurers have no obligation to pay under the relevant insurance policies on such claims. Without the possibility of liability or an obligation to pay, those insurance policies have no value, and are, therefore, not an asset that could justify appointment of a receiver. While a receiver may be appointed *at any time* for the distribution of undistributed assets for the settlement of the unfinished business of a dissolved corporation, for the reasons stated above, the insurance contracts in this case are not as a matter of law undistributed assets in relation to claims commenced more than ten years after dissolution.[59] Similarly, in view of 8 *Del. C.* §§ 280(c)(3) and 281(b), I do not consider defending tort claims brought more than ten years after dissolution to be part of the unfinished business of Krafft–Murphy.

### D. *In re Texas Eastern Overseas* Is Distinguishable

Petitioners contend that *TEO*[60] compels a different conclusion. According to Petitioners, *TEO* established that: (1) appointment of a receiver under Section 279 is not limited by the three-year wind-up period described under Section 278; and (2) certain liability insurance policies are assets so as to trigger application of Section 279. As previously discussed, I agree that the appointment of a receiver may be appropriate *at any time*. It is not clear, however, whether *TEO* held that liability insurance policies are undistributed assets.

The Court of Chancery in *TEO* asked "whether [the petitioner] has provided sufficient grounds for the Court to conclude that it is reasonably likely TEO continues to hold undistributed assets."[61] TEO argued that the petition for appointment of a receiver should be dismissed because the petitioners did not identify with any detail the alleged insurance assets and that, even if an insurance policy existed, it was unknown whether it afforded coverage for TEO.[62] Neither party appears to have addressed directly in the Court of Chancery whether insurance policies of dissolved corporations are an asset. In any event, on appeal to the Delaware Supreme Court, the American Insurance Association and the Coalition for Litigation Justice moved for leave to file an amicus curiae brief on the discrete issue of whether insurance is an undistributed asset in the context of dissolution. The Supreme Court denied that motion as untimely, and also noted that "the issue the movants wish to argue, whether an insurance contract is an undistributed asset, is not an issue addressed by the parties in their briefing. Accordingly, the movants' proposed brief exceeds the scope of the issues that are properly be-

59. This conclusion is not inconsistent with my preliminary holding at the motion to dismiss stage of this litigation that Section 281(b) did not establish a de facto statute of limitations barring claims brought against a dissolved corporation more than ten years after dissolution. *In re Krafft–Murphy Co.*, 2011 WL 5420808, at *24 (Del.Ch. Nov. 9, 2011). I did not reach the issue of whether an insurance contract constituted an asset under Section 279. *Id.* at *26. Furthermore, under Section 279, the appointment of a receiver is within the sound discretion of the court. *Levin v. Fisk Rubber Corp.*, 52 A.2d 741, 742 (Del.Ch. 1947). Conceivably, there might be unusual circumstances, different from those presented

in this case, in which appointment of a receiver in relation to a claim brought more than ten years after dissolution might be appropriate. For purposes of this case, however, there is no need to attempt to specify what those circumstances would be.

60. 2009 WL 4270799 (Del.Ch. Nov. 30, 2009), *aff'd*, 998 A.2d 852, 2010 WL 2540814 (Del. 2010) (TABLE).

61. *Id.* at *4.

62. *Id.*

fore the Court in this appeal." [63] Thus, the Delaware Supreme Court never addressed in *TEO* whether an insurance contract is an undistributed asset.[64]

*TEO* is also distinguishable on the basis that the suit in that case was filed seven years and two months after the company's dissolution.[65] Sections 280–282 recognize that corporate liability might extend for a period of ten years after dissolution.[66] Thus, the decision in *TEO* may have been influenced by the fact that the relevant dissolution statutes suggest that corporate liability extends to those claims brought against a dissolved corporation within ten years of dissolution.

For all of these reasons, I do not find that the decision in *TEO* supports or requires appointment of a receiver here.[67]

## III. CONCLUSION

For the foregoing reasons, I conclude as a matter of law that, with respect to claims that were not asserted until more than ten years after the date of dissolution, Krafft–Murphy does not have undistributed assets, and that, therefore, appointment of a receiver is unwarranted. Therefore, I grant Krafft–Murphy's motion for summary judgment and deny Petitioners' motion for judgment on the pleadings.

**IT IS SO ORDERED.**

**63.** Ruby Aff. Ex. F.

**64.** In that sense, the statement in the Memorandum Opinion on the motion to dismiss in this case that the Supreme Court declined to address the issue because "the appellant had not presented it below," may be mistaken. *In re Krafft–Murphy Co.*, 2011 WL 5420808, at *13 (Del.Ch. Nov. 9, 2011). In fact, it was because none of the parties on appeal addressed the question of whether insurance is an undistributed asset in their appellate briefs.

**65.** *TEO*, 2009 WL 4270799, at *1 (dissolution filed in November 1992; suit filed on January 19, 2000).

**66.** *See supra* note 58 and accompanying text.

**67.** Petitioners also rely on *Addy v. Short*, 89 A.2d 136 (Del.1952), for the contention that "contingent contractual rights can form the basis for the appointment of a receiver under Section 279." The present case, however, is distinguishable from *Addy* because the Court in *Addy* had determined that the possibility of reverter was a "valuable right" so as to constitute "unfinished business of the corporation." *Id.* at 165. Here, the insurance policies are neither valuable nor contingent because Petitioners have made no showing that Krafft–Murphy could be held liable for tort suits brought more than ten years after its dissolution. Therefore, there is no "valuable right" so as to justify appointment of a receiver.