# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN RE APPRAISAL OF | ) | CONSOLIDATED |
| ANCESTRY.COM, INC. | ) | C.A. No. 8173-VCG |

## MEMORANDUM OPINION

Date Submitted: October 14, 2014
Date Decided: January 5, 2015

Kevin G. Abrams, J. Peter Shindel, Jr., and Matthew L. Miller, of ABRAMS & BAYLISS LLP, Wilmington, Delaware, Attorneys for Petitioner Merion Capital, L.P.

Ronald A. Brown, Jr., Marcus E. Montejo, and Eric J. Juray, of PRICKETT, JONES & ELLIOTT, P.A., Wilmington, Delaware, Attorneys for Petitioners Merlin Partners LP and The Ancora Merger Arbitrage Fund, LP.

Stephen C. Norman, Kevin R. Shannon, and James G. Stanco, of POTTER ANDERSON & CORROON LLP, Wilmington, Delaware; OF COUNSEL: Stephen R. DiPrima, William Savitt, Adam M. Gogolak, and Steven Winter, of WACHTELL, LIPTON, ROSEN & KATZ, New York, New York, Attorneys for Respondent Ancestry.com, Inc.

GLASSCOCK, Vice Chancellor

Ancestry.com, Inc. ("Ancestry") was acquired in 2012 by a private equity firm in a cash-out transaction. Merion Capital L.P. ("Merion"), one of the Petitioners in this appraisal action, purchased its shares of Ancestry after the record date for that transaction. The shares were held in fungible bulk by a record owner, Cede & Co. ("Cede"). Merion caused Cede to file a timely appraisal demand for the shares beneficially owned by Merion. A stockholder may seek appraisal only for shares it has not voted in favor of a merger; Cede had at least as many shares not voted for the merger as those for which Merion sought appraisal. That is, Cede had sufficient shares it had not voted in favor of the merger to "cover" its demand on behalf of Merion. Merion then filed this petition for appraisal of the shares.

A plain reading of the appraisal statute as it existed prior to 2007—and case law construing it—indicates that it is the record holder of shares whose actions with respect to the merger determine standing to seek appraisal; the beneficial owner's actions are irrelevant. Ancestry points out, however, that Section 262 as it existed prior to 2007 required the record owner to file the appraisal action on behalf of the beneficial owner, that the 2007 amendment to Section 262(e) allowed, for the first time, the beneficial owner to file suit in its own name, and that Merion did so here. Thus, argues Ancestry, it is Merion, not Cede, that must show it did not vote in favor of the merger. Moreover, according to Ancestry, because Merion purchased its stock after the record date, it must show that its

predecessors did not vote in favor of the merger with respect to these shares as well. Since it cannot demonstrate the latter fact, Ancestry posits, Merion lacks standing here. Ancestry accordingly seeks summary judgment.

Ancestry's arguments notwithstanding, a plain reading of the statute discloses that, for standing purposes, it remains the record holder who must not have voted the shares for which it seeks appraisal. Even if the focus were on the beneficial owner rather that the record owner, Merion did not vote in favor of the merger—to have standing, the statue requires that the stockholder must not have voted the stock for which appraisal is sought in favor of the merger; Section 262 imposes no requirement that a stockholder must demonstrate that previous owners also refrained from voting in favor. Accordingly, Ancestry's Motion for Summary Judgment is denied.

## I. BACKGROUND FACTS

*A. The Acquisition*

Respondent Ancestry is "the world's largest online family history resource."[1] Its subscription-based websites allow subscribers to "discover, preserve and share their family history."[2] Merion, a Petitioner, is a hedge fund that buys stock following merger announcements for the purpose of seeking an

---

[1] Resp't's Mot. for Summ. J. at 4.
[2] Stanco Aff. Ex. 2, at 4.

appraisal as one of its investment strategies, a practice sometimes known as "appraisal arbitrage."[3]

In December 2012, Ancestry was acquired by the private equity firm Permira Advisors ("Permira") for $32 per share in cash. The transaction was announced on October 22, 2012 and the preliminary proxy was filed on October 30. The definitive proxy was filed on November 30, 2012, indicating a record date of November 30 and a meeting date of December 27, 2012.[4] Following the acquisition, two verified petitions for appraisal were filed. One, filed by Merion, sought an appraisal of 1,255,000 shares,[5] while the second, filed by two affiliated hedge funds, Merlin Partners LP and The Ancora Merger Arbitrage Fund, LP, sought appraisal of a total of 160,000 shares.[6]

Merion first began purchasing Ancestry shares on December 4, four days after the record date.[7] On December 12, Samuel Johnson, the portfolio manager at Merion, notified Cede, the record owner of shares, that it would be exercising its

---

[3] *Id.* Ex. 10, at 81:17–24. I note that Samuel Johnson—one of the partners of Merion, not the great lexicographer—did not consider this phrase to be an accurate characterization of the investment strategy in light of the technical definition of "arbitrage." *See id.* at 76:21–78:20. For a fuller description of trade in appraisal causes of action, see *Merion Capital LP v. BMC Software, Inc.*, C.A. No. 8900-VCG, at 2 (Del. Ch. Jan. 5, 2015).
[4] Stanco Aff. Ex. 1.
[5] Verified Pet. for Appraisal, *Merion Capital, L.P. v. Ancestry.com, Inc.*, C.A. No. 8173-VCG (Jan. 3, 2013).
[6] Pet. for Appraisal of Stock, *Merlin Partners LP v. Ancestry.com, Inc.*, C.A. No. 8175-VCG (Jan. 3, 2013).
[7] Stanco Aff. Ex. 18, at MER 0000032.

appraisal rights.[8] The majority of Merion's purchases occurred between December 12 and December 17, when it purchased 1,005,100 of the 1,255,000 shares for which it seeks appraisal.[9] On December 18, 2012, Cede notified Ancestry that it was asserting appraisal rights with respect to 1,255,000 shares beneficially owned by Merion.[10]

In its Petition for Appraisal, Merion asserted that it "did not vote in favor of the merger" and that "[n]one of the petitioner's shares were voted in favor of the merger."[11] This assertion notwithstanding, Merion does not put forth any evidence to verify that, in fact, none of its shares were voted in favor of the merger by prior owners.[12] Merion purchased all of its shares on the open market after the record date and neither knows who the sellers were,[13] nor acquired proxies from prior owners to vote its shares.[14]

*B. Procedural History*

The appraisal petitions were consolidated and I held trial from June 17-19, 2014. In May 2014, a few weeks before trial, Ancestry filed its Motion for

---

[8] *Id*. Ex. 17, at MER 0003055.
[9] *Id*. Ex. 18, at MER 0000032.
[10] *See id*. Ex. 24, at MER 0000547.
[11] Verified Pet. for Appraisal ¶ 8.
[12] Stanco Aff. Exs. 21, 22; *see also id.* Ex. 10, at 41:8–20 (Merion's corporate representative testified that Merion "ha[d] no evidence that could permit it to meet its burden to show that it holds shares not voted in favor of the merger.").
[13] *Id.* Ex. 19 (Petitioner's Supplemental Responses and Objections to Respondent's First Set of Interrogatories (Response No. 1)); *Id.* Ex. 10, at 43:14–25.
[14] *Id.* Ex. 10, at 39:2–8; 73:11–20.

Summary Judgment, solely as to Merion's Petition, arguing that Merion could not show that the shares for which it sought appraisal were not voted in favor of the merger. The question before me on this Motion for Summary Judgment, therefore, is whether a beneficial owner is required to show that the specific shares for which it seeks appraisal have not been voted in favor of the merger.

I reserved consideration of the Motion for Summary Judgment until after full briefing. I heard oral argument on the Motion for Summary Judgment, along with post-trial argument, on October 14, 2014; this Opinion relates only to the Motion for Summary Judgment. For the following reasons, I deny the Respondent's Motion. The appraisal decision will issue separately.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the moving party demonstrates that "there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law."[15] The parties here agree that no genuine issue of material fact exists;[16] the only issue is whether, as a matter of law, Merion has met the statutory requirements of Section 262.

---

[15] Ch. Ct. R. 56(c).
[16] Answering Br. in Opp'n to Resp't's Mot. for Summ. J. at 8.

# III. ANALYSIS

*A. History of Appraisal*

I find it appropriate to take occasion here to retrace the history of this "creature of statute"[17] before considering the modern iteration and the issues concerning it that are now before me.

At common law, mergers could only be consummated upon the unanimous favorable vote of a company's stockholders. The unanimity requirement created in stockholders a veto power that "made it possible for an arbitrary minority to establish a nuisance value for its shares by refusal to cooperate."[18] When the Delaware General Corporation Law was enacted in 1899, our General Assembly provided for consolidation or merger by less-than-unanimous vote of the stockholders:

> Any two more corporations organized under the provisions of this Act or existing under the laws of this State . . . may consolidate into a single corporation . . . . ; the directors or a majority of them, of such corporations, as desire to consolidate, may enter into an agreement signed by them, and under the corporate seals of the respective corporations, prescribing the terms and conditions of consolidation . . . .
>
> Written notice of the time and place of a meeting to consider the purpose of entering into such an agreement, shall be mailed to the

---

[17] *Kaye v. Pantone, Inc.*, 395 A.2d 369, 374 (Del. Ch. 1978).

[18] *Voeller v. Neilston Warehouse Co.,* 311 U.S. 531, 535, n.6 (1941); *see, e.g., Paine v. Saulsbury,* 166 N.W. 1036 (Mich. 1918) (refusing to allow a 99% stockholder to dissolve a corporation because the 1% minority stockholders would not agree), *cited in In re Unocal Exploration Corp. Shareholders Litig.*, 793 A.2d 329, 339 (Del. Ch. 2000), *aff'd sub nom., Glassman v. Unocal Exploration Corp.*, 777 A.2d 242 (Del. 2001)).

last known post office address of each stockholder of each corporation . . . , and the written consent of the owners of at least *two-thirds* of the capital stock of each corporation shall be necessary to the validity and adoption of such an agreement . . . .[19]

At the same time, however, recognizing the need for give-and-take to compensate dissenting stockholders for their loss of the ability to block mergers, an appraisal remedy was provided by statute[20]:

> If any stockholder in either corporation consolidating aforesaid, who objected thereto in writing, shall within twenty days after the agreement of consolidation has been filed and recorded, as aforesaid, demand in writing from the consolidated corporation payment of his stock, such consolidated corporation shall, within three months thereafter, pay to him the value of the stock at the date of consolidation.[21]

That section provided for a three-person panel to ascertain the value of the stock in anticipation of disagreement of valuation. The panel was to be comprised of one individual chosen by each of the dissenting stockholder and the consolidated corporation, and the third to be chosen by those two together.[22]

The appraisal statute has been amended many times since its inception at the turn of the twentieth century, as would be clear to any reader of the statutory

---

[19] 21 Del. Laws c. 273 § 54 (1899) (emphasis added).

[20] *See Reynolds Metals Co. v. Colonial Realty Corp.*, 190 A.2d 752, 755 (Del. 1963); *Francis I. duPont & Co. v. Universal City Studios,* 343 A.2d 629, 634 (Del. 1975); *Meade v. Pac. Gamble Robinson Co.*, 51 A.2d 313, 316 (Del. Ch. 1947) (citing *Chicago Corp. v. Munds*, 172 A. 452 (Del. Ch. 1934), *decree aff'd*, 58 A.2d 415 (Del. 1948)); Barry M. Wertheimer, *The Shareholders' Appraisal Remedy and How Courts Determine Fair Value*, 47 Duke L.J. 613, 614 (1998). *But see* Robert B. Thompson, *Exit, Liquidity, and Majority Rule: Appraisal's Role in Corporate Law*, 84 Geo. L.J. 1, 14 (1995) (noting that not all states provided for appraisal in tandem with allowing mergers by less-than-unanimous vote).

[21] 21 Del. Laws c. 273 § 56 (1899).

[22] *Id.*

7

language above who is familiar with the modern statute. In its earlier iterations, appraisal was simply designed to serve as "a statutory means whereby the shareholder can avoid the conversion of his property into other property not of his choosing"[23]—characterized by scholars as a historic "liquidity purpose."[24] In the wake of an evolution of a "more fungible view of property rights," where the difference between shares of a selling and surviving corporation is perhaps not always significant, and in light of national securities markets providing liquidity in many cases, the place for appraisal within our corporate law changed.[25] Appraisal, it is theorized, came to serve instead "as a check against opportunism by a majority shareholder in mergers and other transactions in which the majority forces minority shareholders out of the business and requires them to accept cash for their shares."[26] More recently, a market has arisen between the stockholders subject to a merger—protection of whom was the traditional concern of the appraisal statute— and those who purchase stock from them pending the merger, seeking to maximize value through appraisal litigation. A vigorous debate exists as to whether such

---

[23] *Francis I. duPont & Co.*, 343 A.2d at 634.

[24] *See* Thompson, *supra* note 20, at 4–5; Wertheimer, *supra* note 20, at 615.

[25] Thompson, *supra* note 20, at 4.

[26] *Id.* ("In earlier times, policing transactions in which those who controlled the corporation had a conflict of interest was left to the courts through the use of fiduciary duty or statutes that limited corporate powers. Today, that function is left for appraisal in many cases. The overwhelming majority of appraisal cases in the last decade reflect this cash-out context: less than one in ten of the litigated cases illustrate the liquidity/fundamental change concern of the classic appraisal remedy."); *see also* Wertheimer, *supra* note 20, at 615–16 ("The remedy fulfills this function ex ante, deterring insiders from engaging in wrongful transactions, and ex post, providing a remedy to minority shareholders who are subjected to such transactions." (footnote omitted)).

litigation is wholesome;[27] for my purposes, however, it is important to note that appraisal rights are a creation of the legislature, not judge-made law, and are "not determined with reference to a stockholder's purpose."[28] My function here is to ensure compliance with the statutory prerequisites, and if they are met, to determine fair value.

*B. The Appraisal Statute*

1. Overview of the Appraisal Statute

The right to appraisal of stock is set out in 8 *Del. C.* § 262. Subsection (a) sets forth the standing requirement, describing those stockholders who "shall be entitled" to appraisal:

> Any stockholder of a corporation of this State who holds shares of stock on the date of the making of a demand pursuant to subsection (d) of this section with respect to such shares, who continuously holds such shares through the effective date of the merger or consolidation, who has otherwise complied with subsection (d) of this section and who has neither voted in favor of the merger or consolidation nor consented thereto in writing pursuant to § 228 of this title shall be entitled to an appraisal by the Court of Chancery of the fair value of the stockholder's shares of stock under the circumstances described in subsection (b) and (c) of this section. As used in this section, the word "stockholder" means a holder of record of stock in a corporation . . . .[29]

---

[27] *See, e.g.,* Minor Myers & Charles R. Korsmo, *Appraisal Arbitrage & the Future of Public Company M&A*, 92 Wash. U. L. Rev. (forthcoming 2015), *available at* http://papers.ssrn.com/sol3/papers.cfm?abstract_id=2424935.

[28] 2 Edward P. Welch et al., Folk on the Delaware General Corporation Law § 262.05 (6th ed. 2014).

[29] 8 *Del. C.* § 262(a).

Thus, in order for a petitioner to perfect the appraisal remedy according to the plain language of Section 262(a), the petitioner need only show that the *record holder* of the stock for which appraisal is sought: (1) held those shares on the date it made a statutorily compliant demand for appraisal on the corporation; (2) continuously held those shares through the effective date of the merger; (3) has otherwise complied with subsection (d) of the statute, concerning the form and timeliness of the appraisal demand; and (4) has not voted in favor of or consented to the merger with regard to those shares.

Section 262(d) provides that notice of a merger invoking appraisal rights must be given to the "stockholder," that is, the "holder of record of stock"[30] and prescribes how that record holder perfects appraisal rights, by making a written demand prior to the vote. Finally, the most recent iteration of subsection (e) sets out the procedure by which a record stockholder who has complied with subsections (a) and (d) and is otherwise entitled to appraisal may file its petition. It also provides such record holder the opportunity to request a statement from the company setting forth "the aggregate number of shares not voted in favor of the merger or consolidation and with respect to which demands for appraisal have been received and the aggregate number of holders of such shares."[31] The subsection concludes with the following provision: "Notwithstanding subsection

---

[30] *Id.*

[31] *Id.* § 262(e).

(a) of this section, a . . . beneficial owner   . . . may in such person's own name, file a petition or request from the corporation the statement described in this subsection."[32]   Therefore, reading subsections (d) and (e) together, the statute provides that the stockholder of record eligible for appraisal must provide the written demand, but once that is done, either the holder of record *or* the beneficial owner may demand information regarding aggregate shares subject to appraisal, and either may file the appraisal petition.

To reiterate, here, Cede was the holder of record with respect to shares not voted for the transaction, and thus had standing to make a demand under subsections (a) and (d).  It did so.  With respect to those shares, the beneficial owner, Merion, filed the petition in its own name, pursuant to subsection (e).  In this situation, Ancestry argues that Merion must demonstrate that *it,* and not Cede, meets the requirements of subsection (a), and that subsection (e), read properly, imposes on Merion an obligation to demonstrate not merely that it did not vote the stock in question for the merger, but that no one else did so, either.  This Court previously faced an analogous issue in another case, *In re Appraisal of Transkaryotic Therapies, Inc.*

---

[32] *Id.*

11

## 2. *Transkaryotic* and the 2007 Amendment to Section 262(e)

In *Transkaryotic*, decided in 2007, this Court was asked "whether under 8 *Del. C.* § 262 a beneficial owner, who acquires shares after the record date, must prove that each of its specific shares for which it seeks appraisal was not voted in favor of the merger?"[33] Ultimately, then-Chancellor Chandler answered that question in the negative, concluding that "[u]nder the literal terms of the statutory text and under longstanding Delaware Supreme Court precedent, only a record holder, as defined in the DGCL, may claim and perfect appraisal rights. Thus, it necessarily follows that the record holder's actions determine perfection of the right to seek appraisal."[34] More pointedly, the Court held that "the actions of the beneficial holders are irrelevant in appraisal matters."[35] The Court considered the way in which shares of stock are often held:

> [M]ost securities issued by domestic companies listed on the NYSE and on the Nasdaq are "on deposit" with central securities depositories, such as the Depository Trust Company ("DTC"). Securities deposited at DTC as part of its book-entry system are generally registered in the name of DTC's nominee, Cede & Co. ("Cede"), making DTC's nominee the registered owner or record holder of these securities. The securities deposited as a part of this system are held in an undifferentiated manner known as "fungible bulk," which means that no DTC participant, no customer of any

---

[33] *In re Appraisal of Transkaryotic Therapies, Inc.*, 2007 WL 1378345, at *1 (Del. Ch. May 2, 2007); *see also id.* at *3 ("The question presented in this case can be stated thusly: Must a beneficial shareholder, who purchased shares *after* the record date but before the merger vote, prove, by documentation, that each newly acquired share (*i.e.*, after the record date) is a share not voted in favor of the merger by the *previous* beneficial shareholder?").

[34] *Id.* at *3.

[35] *Id.* at *4.

participant (such as an intermediary bank or broker), and no investor who might ultimately have a beneficial interest in securities registered to Cede, has any ownership rights to any particular share of stock reflected on a certificate held by Cede.[36]

Simply put, the Court found that it was "incorrect" to "assum[e] that Cede's aggregate share vote on the [merger] may be traced to 'specific shares' attributable to specific beneficial owners."[37]

Cede had voted some shares in favor of the merger and some against, but the Court ultimately found that this did not preclude Cede's petition for appraisal with respect to shares not voted in favor of the merger; *i.e.*, Cede, having otherwise perfected its appraisal rights with respect to approximately 11 million shares for which appraisal was sought, and having voted approximately 17 million shares against the merger, was able to exercise appraisal rights for the 11 million shares held by the beneficial owner.[38]

Following the *Transkaryotic* decision, which noted that only *record holders* could "*claim* and perfect appraisal rights,"[39] the General Assembly amended Section 262(e) of the appraisal statute to add, in relevant part,

> Notwithstanding subsection (a) of this section, a person who is the beneficial owner of shares of such stock held either in a voting trust or by a nominee on behalf of such person *may, in such person's own*

---

[36] *Id.* at *2.
[37] *Id.*
[38] *Id.* at *4.
[39] *Id.* at *3 (emphasis added).

13

*name, file a petition or request from the corporation the statement described in this subsection.*[40]

Notably, when presented with occasion to reconsider the role of beneficial owners in appraisal actions in light of modern trading practices, the General Assembly decided to allow beneficial owners to file a petition in their own name and seek a statement from the corporation,[41] but did not otherwise amend Section 262 to allow beneficial owners to perfect appraisal rights by not voting in favor and making a timely demand; those provisions remain applicable only to "stockholders," still defined as "record owners." Further, the General Assembly took no action to amend the statute in light of the Court's holding that a record owner need only show that the number of shares that it did not vote in favor of the merger is equal to or greater than the number of shares for which it perfected appraisal on behalf of petitioning beneficial owners. There is, in short, no indication that the Court's observation that "the actions of beneficial holders are irrelevant in appraisal matters"[42] is no longer accurate, except with respect to rights granted in Section 262(e).

---

[40] 8 *Del. C.* § 262(e) (emphasis added).

[41] Ancestry makes an argument based on the statutory language describing the statement from the corporation; I address it below.

[42] *Transkaryotic*, 2007 WL 1378345, at *4.

14

*C. Application of the Statute to these Facts*

Merion's argument in this case is statutory and quite simple—it involves a straightforward reading of the statute, considered in light of this Court's decision in *Transkaryotic*. Essentially, Merion argues that, as beneficial owner, it must cause the stockholder—*i.e.*, Cede & Co., the record owner—to make demand. Cede must also have had sufficient shares not voted in favor of the merger, per the *Transkaryotic* decision, to cover the number of shares for which Merion sought appraisal. Having thus perfected appraisal rights through Cede, the beneficial owner may file in its own name in light of the 2007 amendment to Section 262(e), which Merion did here. Thus, Merion concludes, it has standing to pursue appraisal.

Ancestry argues to the contrary: "The statute as amended permits Merion to bring its own petition, but does nothing to excuse Merion from the obligation that has always attached to every Delaware appraisal petitioner to show that the shares it seeks to have appraised were not voted in favor of the merger."[43] In other words, Ancestry assumes that in amending subsection (e) of Section 262 to allow beneficial owners to bring a petition, the General Assembly necessarily, if silently, amended the standing requirements of subsection (a).

As this Court has previously stated,

---

[43] Opening Br. in Supp. of Mot. for Summ. J. at 2.

15

In interpreting a statute, Delaware courts must ascertain and give effect to the intent of the legislature. If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls. The fact that the parties disagree about the meaning of the statute does not create ambiguity. Rather, a statute is ambiguous only if it is reasonably susceptible of different interpretations, or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature. If a statute is ambiguous, however, courts should consider the statute as a whole, rather than in parts, and read each section in light of all others to produce a harmonious whole. Courts also should ascribe a purpose to the General Assembly's use of statutory language, and avoid construing it as surplusage, if reasonably possible.[44]

Additionally,

where a provision is expressly included in one section of a statute, but is omitted from another, it is reasonable to assume that the [l]egislature was aware of the omission and intended it. The courts may not engraft upon a statute language which has been clearly excluded therefrom by the [l]egislature.[45]

In consideration of the foregoing principles, I find Section 262 to be unambiguous, and thus, its plain meaning controls. Accordingly, as applied to these facts, I find that: (1) Cede, the record owner, made demand as required by Section 262(a); (2) consistent with *Transkaryotic*, Cede had at least as many shares not voted in favor of the merger as the number for which demand was made; and

---

[44] *In re Krafft–Murphy Co., Inc.,* 62 A.3d 94, 100 (Del. Ch. 2013), *quoted in In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 702 (Del. 2013) (footnotes and internal quotations omitted); *see also Doroshow, Pasquale, Krawitz & Bhaya v. Nanticoke Mem'l Hosp., Inc.*, 36 A.3d 336, 342–43 (Del. 2012) ("At the outset, a court must determine whether the provision in question is ambiguous. Ambiguity exists when a statute is capable of being reasonably interpreted in two or more different senses. If the statute is unambiguous, then there is no room for judicial interpretation and the plain meaning of the statutory language controls. If it is ambiguous, we consider the statute as a whole, rather than in parts, and we read each section in light of all others to produce a harmonious whole." (internal footnotes and quotation marks omitted)).

[45] *Giuricich v. Emtrol Corp.*, 449 A.2d 232, 238 (Del. 1982).

(3) in exercise of its rights under Section 262(e), the beneficial owner, Merion, filed its petition in its own name. Under the unambiguous language of subsection (a), Merion has standing to pursue appraisal here.

Ancestry suggests that giving the statute its plain meaning could lead to an absurdity: an "interpretation that relieves an appraisal petitioner of the burden of showing that the shares it seeks to have appraised were 'not voted in favor of the merger' leads to absurd results inconsistent with the statute's text" because "the number of shares that qualify for appraisal cannot exceed the number of shares not voted in favor of the merger."[46] This is not, to my mind, a concern on the facts presented, because under the statute it is the record holder's burden to show that it did not vote in favor of the merger with respect to the shares for which appraisal is sought. *Transkaryotic* teaches that, for stock held in fungible bulk, the record holder must have refrained from voting a number of shares sufficient to cover the demand. Cede meets that requirement here.

The potential for "over-appraisal" posited by Ancestry is a theoretical concern where the appraisal arbitrageur acquires stock after a record date, which stock may have been voted in favor of the merger by the seller. I discuss this issue briefly in connection with a discussion of the information rights conveyed to stockholders in Section 262(e) below, and more fully in *Merion Capital LP v.*

---

[46] Opening Br. in Supp. of Mot. for Summ. J. at 16.

*BMC Software, Inc.*[47] Suffice it to say here that Ancestry raises a theoretical problem which is not present in the case before me, and which in any event would at most threaten a policy goal of the statute, not render the statute absurd or inoperable. Such a concern may of course be addressed by the legislature, but it is insufficient to permit me to look past the unambiguous language of the statute.

The plain language of the statute, including the 2007 amendment to Section 262(e), does not impose on beneficial owners any new burden in connection with affording them the opportunity to file petitions in their own names. Further, nothing has changed the longstanding requirement under Delaware law that "[t]o be entitled to appraisal, the beneficial owner must ensure that the record holder of his or her shares makes the demand."[48] That record holder—not the beneficial owner—is subject to the statutory requirements for showing entitlement to appraisal and demonstrating perfection of appraisal rights under Sections 262(a) and (d). While beneficial owners may file a petition in their own names, the record holder is still required to comply with the statutory requirements in order for that petition to be viable.

Even if Section 262 did impose the voting/consent prohibition of subsection (a) on a beneficial owner petitioning for appraisal, Merion would meet that requirement here. Merion did not cause its stock to be voted for the merger.

---

[47] C.A. No. 8900-VCG, at 18–20 (Del. Ch. Jan. 5, 2015).
[48] *Dirienzo v. Steel Partners Holdings L.P.*, 2009 WL 4652944, at *3 (Del. Ch. Dec. 8, 2009).

Ancestry points out that Merion cannot demonstrate that the stock it beneficially owns—held in fungible bulk by Cede—was not voted for the merger by the sellers. The plain language of the standing requirement of subsection (a) focuses on the actions of the *stockholder,* not on the shares, however. Ancestry argues that not imposing a share-tracing requirement[49] on arbitrageurs could lead to the result discussed above: theoretically, more shares could be appraised than the total not voted for the merger.

To demonstrate that this could not comport with legislative intent, Ancestry points to the requirement that subsection (e) imposes on the corporation to provide an informational statement. Section 262(e) provides that a stockholder or beneficial owner

> upon written request, shall be entitled to receive from the corporation . . . a statement setting forth the *aggregate number of shares not voted in favor of the merger or consolidation* and with respect to which demands for appraisal have been received and the aggregate number of holders of such shares.[50]

This information, Ancestry points out, is intended to provide a potential petitioner with information about the pool of other potential litigants, so that it can assess whether the costs of appraisal litigation can be allocated in a way that makes the

---

[49] I use the term "share-tracing requirement" as a shorthand for the burden that Ancestry suggests the statute imposes on appraisal petitioners; it is somewhat imprecise, as Ancestry suggests that the burden could be met in a number of ways, including through, for instance, a petitioner buying shares after the record date also buying sufficient proxies to cover the number of shares for which it seeks appraisal. *See infra* note 54.

[50] *Id.* § 262(e).

19

litigation financially viable. In order for this statement to provide usable information, Ancestry argues, a share-tracing requirement must be imposed on arbitrageurs; otherwise, "shares not voted. . . with respect to which demands . . . have been received" may inadequately describe the pool of eligible shares, which could include shares voted for the merger by prior owners now held by arbitrageurs. Once again, Ancestry has merely pointed out that the statute may not perfectly fulfill what it suggests is the policy goal of the legislature. If the General Assembly wishes to address the "problems" caused by appraisal arbitrage, either substantive or with respect to the operation of Section 262, presumably it will do so, but the fact that, in Ancestry's reading, the statutory language is an imperfect representation of legislative intent does not give a judge license to rewrite clear statutory language; nothing Ancestry has pointed out makes operation of the statute impossible or leads to a result that is absurd.

Finally, Ancestry contends that Section 262(e) contains an explicit share-tracing requirement. Ancestry points to the following language from Section 262(e): "a person who is a beneficial owner of *shares of such stock* held . . . by a nominee *on behalf of such person* may, in such person's own name, file a petition [for appraisal]."[51] It argues that "shares of such stock" refers to the earlier sentence in that subsection imposing on the company the information reporting

_____

[51] Reply Br. in Supp. of Resp't's Mot. for Summ. J. at 7 (alterations in original) (quoting 8 *Del. C.* § 262(e)).

20

requirement discussed above—"shares not voted in favor of the merger or consolidation and only with respect to which demands for appraisal have been received."[52]  Notably, however, Ancestry concedes that "[t]he subsections of § 262 pertaining to the *perfection* of appraisal rights were not amended to refer to beneficial owners."[53]

Subsection (e) expands the rights of petitioners under Section 262.  It allows beneficial owners as well as record holders to seek appraisal, and gives such petitioners an informational right.  The language Ancestry points to is simply insufficient to work the legislative change Ancestry posits: to place the burden of demonstrating perfection of rights to appraisal on the beneficial owner and impose a share-tracing requirement.  Nothing in the above-quoted subsection suggests that the General Assembly intended to require beneficial owners who made post record-date purchases to show that their specific shares were not voted in favor of the merger, in contradiction to the approach taken in *Transkaryotic* which accounted for the fact that beneficially-owned shares are typically held in fungible bulk.

Ancestry's real argument is that allowing arbitrageurs appraisal rights for shares they acquired after the record date could lead to an unwholesome result, namely, extending appraisal rights to shares voted *for* the merger by prior owners,

---

[52] 8 *Del. C.* § 262(e); *see also* Reply Br. in Supp. of Resp't's Mot. for Summ. J. at 7.
[53] Opening Br. in Supp. of Mot. for Summ. J. at 20 (emphasis added).

21

potentially resulting in more shares appraised than the number not voted for the merger. They ask me to remedy this by imposing a requirement on beneficial owners who petition for appraisal, a requirement that is not found in the statute: tracing the voting history of their shares. [54] To do so would be to exercise a legislative, not a judicial, function. [55]

## IV. CONCLUSION

I find that Cede perfected Merion's appraisal rights with respect to the shares for which is seeks appraisal, and that Merion is entitled to bring a petition for appraisal of those shares in its own name under Section 262(e). For the foregoing reasons, the Respondent's Motion for Summary Judgment is denied. An appropriate order accompanies this Memorandum Opinion.

---

[54] Ancestry points out that "tracing"—speaking strictly—the voting history of a particular share is not required to avoid the unwholesome result addressed above; Ancestry suggests that a petitioner could simply buy sufficient proxies to cover the number of shares for which it seeks appraisal, and suggests other ways of satisfying this policy concern. This argument proves too much; it clarifies that there are a number of ways to address what Ancestry sees as a problem with the statute. This is a matter requiring legislative, not judicial, deliberation. *See Merion Capital LP v. BMC Software, Inc.*, C.A. No. 8900-VCG, at 18–20 (Del. Ch. Jan. 5, 2015).

[55] *See, e.g.*, *In re Adoption of Swanson*, 623 A.2d 1095, 1099 (Del. 1993) ("It is beyond the province of courts to question the policy or wisdom of an otherwise valid law. Instead, each judge must take and apply the law as they find it, leaving any changes to the duly elected representatives of the people." (internal citation omitted)); *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 80 A.3d 155, 160 (Del. Ch. 2013) ("If a valid statute is not ambiguous, the court will apply the plain meaning of the statutory language to the facts before it. It would usurp the authority of our elected branches for this court to create a judicial exception to the words 'all . . . privileges' for pre-merger attorney-client communications regarding the merger negotiations. That sort of micro-surgery on a clear statute is not an appropriate act for a court to take." (internal footnotes omitted)).

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| IN RE APPRAISAL OF | ) | CONSOLIDATED |
| ANCESTRY.COM, INC. | ) | C.A. No. 8173-VCG |

## **ORDER**

AND NOW, this 5th day of January, 2015,

The Court having considered the Respondent's Motion for Summary Judgment as to Merion Capital, L.P., and for the reasons set forth in the Memorandum Opinion dated January 5, 2015, IT IS HEREBY ORDERED that the Respondent's Motion is DENIED.

SO ORDERED:

/s/ Sam Glasscock III
Vice Chancellor